UNITED STATES of America

v.

Allen SCHWEITZER, Appellant.

No. 92–5713.

United States Court of Appeals,
Third Circuit.

Argued Aug. 3, 1993.

Decided Sept. 16, 1993.

David W. Fassett (argued), Arseneault, Donohue, Sorrentino & Fassett, Chatham, NJ, for appellant.

Michael Chertoff, U.S. Atty., Edna B. Axelrod (argued), Eric L. Muller, Asst. U.S. Atty., Newark, NJ, for appellee.

Before: STAPLETON, HUTCHINSON and ROTH, Circuit Judges.

### OPINION OF THE COURT

STAPLETON, Circuit Judge.

Allen Schweitzer pleaded guilty to conspiring to bribe a public official in order to secure confidential information held by the Social Security Administration ("SSA"). He here appeals from a sentence of fourteen months imprisonment imposed as a result of an upward departure from the Guideline range. Because one of the factors cited by the district court to justify its upward departure was not relevant to Schweitzer's culpability, we will reverse and remand for resentencing.

### I.

Schweitzer operated a private investigative agency that provided its clientele with personal information about individuals. This information would include addresses, phone numbers, banking and credit information, earnings and employment information and the like. The objective of Schweitzer's conspiracy was to obtain employment and earnings information maintained by the SSA in its confidential computer files. Disclosure of this information is prohibited by 26 U.S.C. § 6103.

Schweitzer approached James Bailey, a former Regional Inspector General for the Office of Inspector General ("OIG"). As an inspector, Bailey had supervised Patricia Rosemond who was an OIG Special Agent. As a Special Agent, Rosemond had access to SSA's confidential files. At Schweitzer's request, Bailey obtained confidential information on 36 individuals from Rosemond for a single $1,000 payment. Bailey supplied this information to Schweitzer and received from him 28 payments of $130 each, for a total of $3,640. Schweitzer, in turn, sold each individual's information to a client. The government contends that he received $300 in each instance, for a total of $10,800. At the sen-

tencing hearing, Schweitzer's counsel disputed the $10,800 figure but acknowledged gross receipts as high as $8,000.

While awaiting his sentencing hearing, Schweitzer appeared on the Oprah Winfrey Show and detailed the workings of his private investigation business and others like it. He claimed to have earned personal income in the high six figures and insisted that he continued to have the ability to obtain confidential information from government sources. According to Schweitzer, present and former government employees capitalize on pervasive abuse of confidential information.

Section 2C1.1(a) of the Sentencing Guidelines establishes a base offense level of 10. If "the benefit received in return for" the bribe exceeds $5,000, a two level enhancement is provided. U.S.S.G. §§ 2C1.1(b)(2)(A), 2F1.1(b)(1)(C). Application Note 2 of the Commentary to § 2C1.1 explains the meaning of "benefit received" in this context:

> The value of "the benefit received or to be received" means the net value of such benefit. *Examples:* (1) A government employee, in return for a $500 bribe, reduces the price of a piece of surplus property offered for sale by the government from $10,000 to $2,000; the value of the benefit received is $8,000. (2) A $150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000. Do not deduct the value of the bribe itself in computing the value of the benefit received or to be received. In the above examples, therefore, the value of the benefit received would be the same regardless of the value of the bribe.

The district court concluded that the benefit received by Schweitzer and his co-conspirators was in excess of $5,000 and added two points to the base offense level. It then adjusted downward two points under U.S.S.G. § 3E1.1(a) for Schweitzer's acceptance of responsibility. Utilizing a criminal history category of I, the district court calculated a guideline range of six to twelve months. It then departed upward from that range under U.S.S.G. § 5K2.0 [1], giving the following explanation:

> I find, by a preponderance of the evidence, that there is an aggravating circumstance both of a kind and to a degree not taken into consideration by the Sentencing Commission. This defendant's conduct went well beyond the usual bribe situation comprehended by 2C1.1. His conduct, as the Government has observed in its brief, invaded the privacy of so many people whose private and confidential information was accessed, compromised and sold. Moreover, his wholesale buying and selling of confidential information provided to the Government in confidence, not only has undermined the Government's ability to amass that information in the future, but has caused a loss of confidence in our government on the part of those persons and others. This loss of public confidence (and, no doubt, the fear of many members of the public that even if the defendant has now cleaned up his act, either he or others had gotten information that had been given in confidence) was enhanced by the Oprah Winfrey Show on which he rather arrogantly appeared, telling people who had not theretofore known that their information, too, may well have been compromised. Indeed, the defendant has apparently not restricted himself to the Oprah Winfrey Show, but has given multiple oth-

---

1. Section 52K.0 provides in part:
   Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, *not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.*" ... Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.,* as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

er interviews as well telling about what he had done and, on the Oprah Winfrey Show, how much money he got out of it, and bragging or predicting that he would get probation. And as the Government also tells me, and there's no serious dispute on this score, the records seized from his business indicate that he was doing an enormous business in confidential information. As he himself said, he was reaping in the high six figures.

These factors are aggravating factors simply not taken into account by the Sentencing Commission and I will upward depart to a guideline range of 10 to 15 months.

App. at pp. 106–07.

Schweitzer challenges this upward departure as well as the finding that the "benefit received" exceeded $5,000. We will address these challenges in reverse order.

## II.

■ The district court made no finding as to whether Schweitzer received $10,800 or $8,100 from his clients for the purchased information. Accordingly, he argues that we must accept the $8,100 figure and that we must calculate the "net value" of the benefit received by subtracting therefrom the $4,680 he was required to pay to obtain the information. Since the resulting "net value" of $3,420 is less than $5,000, Schweitzer insists that the two point increase under § 2C1.1(b)(2)(A) was improper. We cannot agree.

Application Note 2 of the Commentary to § 2C1.1 and the cases cited by Schweitzer allow for a deduction of the value that would be derived in a legitimate transaction not induced by a bribe. Thus, the note tells us that if a bribe brings a bargain price at a government sale, the net value is the amount saved by the bribe. Because the sale item had a value that any purchaser in a legitimate transaction would receive, that value was not received as a result of the bribe and should not be considered in determining the degree of the bribe giver's culpability. This concept of "net value received" has nothing to do with the expense incurred by the

wrongdoer in obtaining the net value received. This is clear from the Note's instruction that the value of the bribe is not to be deducted in calculating the "net value."

Here there was no value that could be received in a legitimate transaction. Sale of the information was prohibited by law. The benefit received by the Schweitzer conspiracy was the market value of the information secured for Schweitzer's clients. There is no dispute that the market placed a value of at least $8,100 on that information.

There is yet another flaw in Schweitzer's argument. He pleaded guilty to conspiracy to bribe a public official. The net benefit received by the conspiracy was the value of the information sold to Schweitzer's clients. The fact that Schweitzer, in order to make the conspiracy work, had to share $4,680 of the conspiracy's illgotten gain with Bailey is wholly irrelevant to the net benefit received by the conspiracy. Accordingly, we find no error in the district court's conclusion that the net value of the benefit received was in excess of $5,000.

## III.

In its explanation for its upward departure, the district court listed several "aggravating factors simply not taken into account by the Sentencing Commission." These included the volume of Schweitzer's dealings in confidential government information and the fact and magnitude of the resulting invasion of personal privacy. In departing, it is apparent that the district court was following the suggestion of the Sentencing Commission in Application Note 5 of the Commentary to § 2C1.1 that an upward departure may be warranted "where ... the defendant's conduct was part of a systematic or pervasive corruption of a government function ... that may cause loss of public confidence in government."

We agree with the government that the evidence supports the district court's conclusion that Schweitzer's conduct went well beyond the "heartland bribery offense covered by § 2C1.1" both because of its extent and because of the consequences of that conduct for the large number of victims that it im-

**48**

pacted. We further find no fault with the district court's conclusion that these were factors of a kind or a degree not taken into account by the Sentencing Commission.

 As we noted in *United States v. Kikumura,* 918 F.2d 1084, 1098 (3d Cir.1990), however, when presented with an upward guideline departure, our review is not limited to whether the circumstances found to be aggravating were adequately considered by the Sentencing Commission within the meaning of 18 U.S.C. § 3553(b):

> Once we conclude that a departure is not prohibited by § 3553(b), we must still determine whether the sentence imposed was reasonable.... This determination "involves at least two subissues: whether the factors relied on are appropriate; and whether the degree of departure was appropriate."

In order to be "appropriate," a factor occasioning or contributing to an upward departure must be relevant to the defendant's culpability. As we noted in *Kikumura,* the Sentencing Commission didn't take into consideration the color of the defendant's eyes, but an upward departure predicated on the fact that the defendant's eyes are blue would be inappropriate and unreasonable. *Id.* at 1110.

 As we read the district court's explanation for its departure, it relied in part on its view that Schweitzer's appearance on the Oprah Winfrey Show and elsewhere in the media immediately before his sentencing significantly "enhanced" the "loss of public confidence" in government initially occasioned by his conduct and ensuing prosecution. It was entirely appropriate, in our view, for the district court to take into account the corruption of government occasioned by Schweitzer's conduct as well as the loss of public confidence necessarily occasioned by its original disclosure. But it seems inappropriate to us if the severity of Schweitzer's punishment was increased because he sought to call attention to a situation that is unquestionably a matter of public concern.

We do not hold that this was an inappropriate case for an upward departure, or for an upward departure of the magnitude decid-

ed upon by the district court. Nor do we suggest that all aspects of Schweitzer's media appearances are necessarily irrelevant to a decision on departure. We hold only that it was inappropriate for the district court, in considering the government's motion for an upward departure, to take into account Schweitzer's media efforts to call attention to the alleged ease of acquiring confidential information held by the government. On remand, the district court will be free to consider whether the other factors cited by it are sufficient to warrant an upward departure and, if so, how great a departure they justify.

We will reverse the judgment of the district court and remand for resentencing.