**UNITED STATES of America**

v.

**Jack LEON.**

**Criminal No. 97–568.**

United States District Court,
D. New Jersey.

April 7, 1998.

Faith S. Hochberg, U.S. Attorney, Bruce A. Levy, Assistant U.S. Attorney, Newark, NJ, for U.S.

James A. Plaisted, Walder, Sondak & Brogan, P.A., Roseland, NJ, for Defendant.

## OPINION

ORLOFSKY, District Judge.

Once again, this Court is called upon to revisit the United States Sentencing Guidelines, a body of law which occasionally invites arbitrary and irrational distinctions, and where clarity and principles are in relatively short supply. Presently before the Court are the motions of Defendant, Jack Leon ("Leon"), for a downward departure based on claims of "extraordinary restitution" and extraordinary collateral consequences. The Government and Leon also dispute the method for calculating "the value of ... the improper benefit ... conferred," within the meaning of U.S.S.G. § 2B4.1(b)(1) in determining the specific offense characteristics of Leon's conduct. Leon contends that certain categories of expenses should be deducted from the gross amount of the benefit conferred, a claim that is opposed by the Government. For the reasons set forth below, Leon's motions for a downward departure will be denied. I also hold that only direct costs, as opposed to indirect costs, as explained below, may be deducted in calculating "the value of ... the improper benefit ... conferred."

## I. Factual and Procedural Background

On September 29, 1997, after waiving indictment, Leon pleaded guilty to a one count Information charging a violation of 18 U.S.C. § 371. Specifically, the Information charged that Leon conspired to:

(a) offer and pay remuneration (including a kickback, bribe, and rebate), directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service, for which payment was made in whole or in part under the Medicare Program, in violation of 42 [U.S.C. § ] 1320a–7b(b)(2)(A); and

(b) defraud the United States and its agencies, to wit, [the Department of Health & Human Services], by submitting Medicare claims and receiving Medicare payments to which they [sic] were not entitled and by impairing, impeding, and obstructing the lawful and legitimate functions of [the Department of Health & Human Services] in administering health care and health insurance plans, including Medicare.

Information ¶ 9 (dated Sept. 29, 1997). The essence of the conspiracy charged in the Information was based upon an agreement made through George Wozunk, a salesman for Leon's company, Leon SCD Unlimited, Inc. ("Leon SCD"). The agreement was allegedly made with certain podiatrists and contemplated that, in exchange for referrals of patients and orders for durable medical equipment ("DME") and supplies to Leon SCD, certain unlawful payments would be made to these podiatrists. *Id.* at ¶¶ 10, 12. According to the Information, the payments to the podiatrists were disguised either as lease payments for space being rented by Leon SCD or as payments for work allegedly not performed the wife of one of the podiatrists, *i.e.*, as payments from an employer to an employee. *Id.* at ¶¶ 10, 16, 20.

In connection with a separate civil action brought pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, Leon and Leon SCD entered into a settlement agreement with the United States and the relator. *See* Letter from Harris M. Recht (dated Mar. 11, 1998), Exh. A (Settlement Agreement). The Government's central contention in the False Claims action was that Leon and Leon SCD "paid improper payments to certain physicians to induce Medicare referrals in violation of the Anti–Kickback Statute," 42 U.S.C. § 1320a–7b. *Id.*, Exh. A at ¶ 3. The Government also contended that it had claims and causes of action against Leon and Leon SCD based on Leon and Leon SCD's submission of claims for a number of lymphedema pumps. *Id.*, Exh. A at ¶ 2. In the Settlement Agreement, *inter alia*, Leon and Leon SCD waived claims for monies owed to them by the Government in the amount of $142,901. *Id.*, Exh. A at ¶ 7.

As part of the Settlement Agreement, Leon and Leon SCD also "agree[d] that it

[sic] will waive and will not assert any defense which may be based in whole or in part on the Double Jeopardy or Excessive Fine Clauses of the Constitution or the holding or principles set forth in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and agree[d] that the amounts paid under [the Settlement Agreement] are not punitive in effect or in nature in any criminal prosecution based on conduct specified in Paragraphs 2 and 3." *Id.,* Exh. A at ¶ 16. In connection with the settlement of the False Claims action and after Leon entered a plea of guilty to the Information, Leon and Leon SCD also agreed to waive their rights to other claims for payment totaling $100,000. *See, e.g., id.,* Exh. C (Letter from Harris M. Recht (dated Nov. 26, 1997)). These were claims for payment submitted by Leon SCD to the Medicare program and which, as a result of the Government's objection to payment of the claims, could have been adjudicated in some type of administrative hearing. These claims were unrelated to the conduct charged in the Information. *See id.,* Exh. B (Letter from Harris M. Recht (dated Oct. 6, 1997)), Exh. D (Letter from Bruce A. Levy (dated Nov. 26, 1997)).

## II. Discussion

### A. Extraordinary Restitution

Pursuant to U.S.S.G. § 3E1.1(a), the Court should, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). Application Note 1(c) includes as an appropriate consideration in determining whether a defendant qualifies for this adjustment, the "voluntary payment of restitution prior to adjudication of guilt." *Id.* at comment. (n.1(c)).

Interpreting section 3E1.1 and section 5K2.0, the general standard governing departures, the Third Circuit has held that "a *sentencing court may depart downward when the circumstances of a case demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present.*" *United States v. Lieberman,* 971 F.2d 989, 996 (3d Cir.1992) (emphasis added). Downward departures based on exceptional acceptance of responsibility have continued after *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). For

example, in *United States v. Sally,* 116 F.3d 76 (3d Cir.1997), the Third Circuit held that "post-offense rehabilitation efforts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." *Id.* at 80–81 (relying on *Lieberman* and *United States v. Brock,* 108 F.3d 31 (4th Cir.1997) and noting that "[c]ollectively, these decisions clearly establish that when an offender demonstrates an exceptional or extraordinary degree of responsibility, a court may depart downward"). Thus, it is clear that I have the discretion to depart downward in this case.

■ I must therefore determine whether and, if so, to what extent, to exercise this discretion. The basis upon which Leon argues that I should depart downward is his payment of restitution in an amount of $142,-901, plus his agreement to forego claims totaling approximately $100,000, the payment of which the Government had contested. Leon argues that he "made a decision that he wanted the government to be made whole and he wanted to put these matters behind him; therefore, [he] agreed to more than full restitution." Letter from James A. Plaisted 2 (dated Feb. 4, 1998); *see also* Letter from Harris M. Recht (dated Mar. 11, 1998).

The touchstone of any downward departure based upon extraordinary restitution is *voluntariness,* that is, the taking of certain actions by the defendant in the absence of any legal duty to take those actions, or taking those actions before a defendant is under any legal obligation to do so. For example, in *Lieberman,* the defendant agreed to pay more than what he thought he owed as restitution, promptly resigned from his position at a bank when confronted with the charges of embezzlement from the bank, and met with bank officials to explain how they could detect future improper transactions. *Lieberman,* 971 F.2d at 996; *see also United States v. Garlich,* 951 F.2d 161, 161–63 (8th Cir. 1991) (finding that sentencing court had authority to depart downward where defendant, *inter alia,* liquidated assets to ensure full

restitution one year before indictment, even where defendant had no obligation to do so).[1]

In Leon's case, however, the payment of the $142,901 portion of the restitution was in settlement of a *civil* liability which the Government was separately pursuing and which occurred in the shadow of criminal proceedings. *See, e.g.,* Letter from Harris M. Recht (dated Mar. 11, 1998), Exh. C (Letter from Harris M. Recht (dated Nov. 26, 1997)). That is, the settlement was not a purely voluntary act, as it was in *Lieberman.* Indeed, it does not even appear to be partially voluntary. *See, e.g., United States v. Hairston,* 96 F.3d 102, 109 (4th Cir.1996) (citing cases and discussing timing and motive factors in measuring whether acceptance of responsibility is extraordinary), *cert. denied,* —— U.S. ——, 117 S.Ct. 956, 136 L.Ed.2d 843 (1997); *United States v. Miller,* 991 F.2d 552, 553 (9th Cir.1993) (restitutionary "payment had to have been *genuinely voluntary,* rather than motivated *primarily* by a collateral consideration such as the desire to settle [a] civil lawsuit") (emphasis added) (Kozinski, J.). There is no evidence to suggest that the Government would not have recovered, at least, the $142,901 paid by Leon, if not more, as part of the False Claims action. Finally, it is unclear how much acceptance of responsibility the settlement reflects, when in the settlement, Leon and Leon SCD continued to deny liability under various statutes, including the one which Leon had pled guilty to conspiring to violate. *See* Letter from Harris M. Recht (dated Mar. 11, 1998), Exh. A at ¶ 4. It must be remembered that the payment of money is only relevant to the extent it demonstrates an *acceptance of responsibility. See, e.g., United States v. Bennett,* 60 F.3d 902, 905 (1st Cir.1995). In short, Leon's actions in the settlement of the $142,901 claim with the Government were not primarily voluntary and do not exhibit an extraordinary acceptance of responsibility.

With respect to the waiver of the payment of $100,000 in disputed claims, it is not clear that this was either voluntary or restitutionary. First, it appears that Leon only agreed to forego pursuit of the claims at a hearing because the Government drove a very hard bargain. *See, e.g.,* Letter from Harris M. Recht (dated Mar. 11, 1998), Exh. B, C, E. This was not primarily a voluntary gesture reflecting a willingness to adhere to society's norms, *see United States v. Bean,* 18 F.3d 1367, 1369 (7th Cir.1994) (Easterbrook, J.), even if a desire to reduce his sentence—something quite distinct from a desire to make restitution—was one of Leon's motivations. Second, assuming that Leon agreed to forego pursuit of these claims "in an effort to put this matter behind him," *id.,* Exh. E at 2, foregoing claims against the Government which are completely separate from the criminal behavior for which Leon is being sentenced does not demonstrate acceptance of responsibility *for the criminal behavior.* Thus, foregoing pursuit of the $100,000 of claims cannot be viewed as "restitution" for Leon's criminal behavior. Simply because Leon may have viewed all his legal problems resulting from his interactions with the Medicare program as related, is no reason to conclude that the resolution of some of those problems should be credited as acceptance of responsibility for those acts which were being prosecuted criminally. Accordingly, I hold that Leon has not exhibited an extraordinary acceptance of responsibility with respect to either the $142,901 payment, or the approximately $100,000 of claims for payment against the Government. The motion for a downward departure on this basis will be denied.[2]

**B. Collateral Consequences**

Leon proffers as a second ground for a downward departure an argument based on his debarment from participation in the fu-

---

1. Of course, now that restitution is mandatory, *see* 18 U.S.C. § 3663A(a)(1), the frequency of motions based on extraordinary restitution will likely decrease.

2. Because I conclude that Leon has not shown extraordinary restitution such that a downward departure would be warranted, I need not reach the question of whether Leon "waived [the] argu-

ment that his payments in the civil case were punitive." Letter from Bruce A. Levy 4–5 (dated Mar. 16, 1998). Accordingly, I need not answer the question of whether a waiver of a claim that a payment is punitive for the purposes of, *inter alia,* double jeopardy can be reasonably understood as a waiver of an argument that the payment is evidence of extraordinary restitution under the Sentencing Guidelines.

ture as a provider of equipment and supplies for Medicare programs and the fact that his business has been "bankrupted." Letter from James A. Plaisted 3 (dated Mar. 30, 1998). The mere existence of collateral consequences resulting from criminal conduct is not by itself grounds for a downward departure. Departures are governed by U.S.S.G. § 5K2.0 and, for collateral consequences to warrant a downward departure would require that they be "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0; *see also* 18 U.S.C. § 3553(b). While I do have the discretion to depart based on such collateral consequences, *see, e.g., United States v. Hoffer,* 129 F.3d 1196, 1204–06 (11th Cir.1997) (noting that departure in *United States v. Aguilar,* 994 F.2d 609 (9th Cir.), *opinion withdrawn,* 11 F.3d 124 (9th Cir.1993), *aff'd in part and rev'd in part on other grounds,* 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995), was not based on loss of position, but rather on additional punishment in the form of burden and humiliation the defendant would suffer in later public proceedings), Leon has not explained why the effects on his ability to participate in the Medicare program as a provider and on his business resulting from the criminal conviction are atypical, or out of the ordinary in kind or degree. *See, e.g., United States v. Drew,* 131 F.3d 1269, 1270 (8th Cir.1997) (collateral consequences such as interruption of education and disqualification from doctoral program did not warrant departure).

Furthermore, as a separate reason why the departure should be denied, exclusion as a Medicare provider was part of the consideration Leon bargained for in the settlement with the Government. *See* Letter from Harris M. Recht (dated Mar. 11, 1998), Exh. A at ¶ 10. He was aware of those consequences and accepted them as part of the settlement. He cannot now plausibly argue that a collateral consequence which was part of the consideration for which the Government released him from certain claims warrants a

downward departure. Such a departure would substantially disturb that arms-length negotiation and agreement. For better or worse, the Government pursued Leon both civilly and criminally and the Court will not reward Leon on the criminal side with what he specifically gave up on the civil side. Therefore, the motion for a downward departure on this basis will be denied.

### C. Deductibility of Expenses

 Leon and the Government disagree about how "the value of the ... improper benefit ... conferred" should be calculated. U.S.S.G. § 2B4.1(b).[3] Leon claims that delivery charges, sales commissions charges, and various other expenses including expenses for rent, employee salaries, autos, payroll processing, insurance, telephone, and supplies should be deducted in calculating the "the value of the ... improper benefit ... conferred."

I hold that only "direct costs" are deductible in calculating the amount of the benefit conferred. By direct costs, I mean all variable costs that can be specifically identified as costs of performing a contract, that is, expenses which would not have been incurred, but for the corruptly attained orders, as opposed to *indirect costs* which are independent of the quantity of goods provided and would have been incurred regardless of whether the bribery had occurred. *See, e.g., United States v. Landers,* 68 F.3d 882, 884 & n. 2, 885 n. 3 (5th Cir.1995) (Smith, J.); *cf. United States v. Dickler,* 64 F.3d 818, 828–29 & n. 13 (3d Cir.1995) (holding that where district court looked to defendants' gain as alternative to victim's loss and deducted certain expenses, it was error to refuse to deduct commissions paid and other expenses, and distinguishing *United States v. Badaracco,* 954 F.2d 928 (3d Cir.1992)). Indirect costs are not deductible. Additionally, the amount of the bribe paid is not deductible. *See, e.g., id.* at 885 (discussing *United States v. Schweitzer,* 5 F.3d 44, 47 (3d Cir.1993)); U.S.S.G. § 2B4.1, comment. (n.2) (referring to U.S.S.G. § 2C1.1, comment. (n.2)). This

---

3. U.S.S.G. § 2B4.1(b)(1) provides:
 If the greater of the value of the bribe or the improper benefit to be conferred exceeded $2,000, increase the offense level by the corre-

sponding number of levels from the table in § 2F1.1.
U.S.S.G. § 2B4.1(b)(1).

method of calculating the "benefit conferred" will most closely approximate the difference between what did happen as a result of the bribe and what would have happened without the bribe. This will allow the Court to evaluate in the most accurate and nuanced fashion "the value of the action to the [payer of the bribe]," *see* U.S.S.G. § 2B4.1, comment. (backg'd.); U.S.S.G. § 2C1.1, comment. (backg'd.); *cf. United States v. Wester,* 90 F.3d 592, 597–99 (1st Cir.1996) (Boudin, J.) (reversing district court for inaccurate evaluation of economic value of bribe where defendant corruptly arranged $2.3 million loan in exchange for release from personal liability on $12.4 million loan and holding that value of release would depend on factors such as the likelihood of default and worth of security for loan); *United States v. Kummer,* 89 F.3d 1536, 1545–46 (11th Cir.1996). Therefore, as the Government appears to agree, the cost of goods sold would be deductible. Also deductible are the delivery charges specifically identifiable to each lymphedema pump and sales commission specifically identifiable to each lymphedema pump.[4] The amount of any bribe paid—either the amount paid to employees for work not performed or the amount paid as commercially unreasonable rent—would not be deductible because they are not direct costs and because the amount of the bribe is specifically made not deductible by the commentary to the Sentencing Guidelines. *See United States v. Boggi,* 74 F.3d 470, 475 (3d Cir.1996) ("commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"), *cert. denied,* —— U.S. ——, 117 S.Ct. 82, 136 L.Ed.2d 40 (1996). At this time, no other direct costs, or direct losses sustained by Leon as a result of conspiracy, have been specified by either Leon or the Government.

Finally, Leon has argued that since his offense is personal, the amount of the benefit conferred should be based on the benefit conferred upon him personally rather than on the benefit conferred upon Leon SCD, his company. Because Leon owns Leon SCD, it is unclear whether there is any meaningful difference between these two modes of calculating benefit conferred. Leon has not suggested any difference, except to the extent he argues that indirect expenses should be deducted, an argument which I have already rejected. There may be cases where a principled distinction between benefit to a defendant and benefit to a defendant's corporation could be drawn. Where, however, as in this case, the corporation is, for all practical purposes, the defendant—and there has been no evidence to suggest otherwise—this distinction makes no difference.

## III. Conclusion

For the reasons set forth above, the motions for a downward departure will be denied, and only "direct costs" will be deducted in calculating the "the value of the . . . improper benefit . . . conferred." The Court will enter an appropriate order.

## ORDER

This matter having come before the Court on the motions of Defendant, Jack Leon, James A. Plaisted, Esq. of Walder, Sondak & Brogan, P.A. appearing on behalf of Defendant, for a downward departure and for a determination of the method of calculating "the value of . . . the improper benefit to be conferred," within the meaning of U.S.S.G. § 2B4.1(b)(1), Faith S. Hochberg, Esq., United States Attorney and Bruce A. Levy, Esq., Assisted United States Attorney, appearing on behalf of the United States, and

The Court having reviewed the submissions of the Defendant and the United States, and the Presentence Investigation Report prepared by the United States Probation Office; and

---

4. The Government argues that "[i]t makes no sense, and would be most ironic, to permit the defendant to deduct proceeds of the conspiracy that he distributed to his co-conspirator in furtherance of the conspiracy." Letter from Bruce A. Levy 7 (dated Mar. 6, 1998). However, it makes even less sense for the same $1,000 per lymphedema pump to be charged as a "benefit conferred" to *both* Leon and Wozunk. This would be double-counting. It also wholly ignores economic reality to characterize the $1,000 Leon paid Wozunk per lymphedema pump as part of any benefit conferred on Leon.

For the reasons set forth in an OPINION filed concurrently with this ORDER,

IT IS HEREBY ORDERED on this 7th day of April, 1998, that the motions for a downward departure are DENIED; and

IT IS FURTHER ORDERED that "the value of ... the improper benefit to be conferred," within the meaning of U.S.S.G. § 2B4.1(b)(1), will be calculated by deducting only direct costs, as set forth more fully in the OPINION filed concurrently with this ORDER.