**UNITED STATES of America**

v.

**Michael KANE, Defendant.**

**No. Crim.A. 98–541.**

United States District Court,
E.D. Pennsylvania.

March 24, 2000.

John J. Pease, U.S. Attorney's Office, Philadelphia, PA, for plaintiff.

Stanford Shmukler, Philadelphia, PA, for defendant.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is defendant Michael Kane's motion for a downward departure from the applicable Sentencing Guidelines range for extraordinary rehabilitation. On March 23, 2000, the court held a hearing and ruled from the bench that the defen-

dant merited a downward departure to a sentence of 120 months imprisonment.

*Background*

On April 19, 1999, Michael Kane pled guilty before this court to two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). On two occasions in 1998, he sold a total of five ounces of methamphetamine to a "confidential source." Based on the defendant's prior convictions, he qualifies as a career offender with a base offense level of 31 and a criminal history category of VI. All parties agree that the range of imprisonment required by the Sentencing Guidelines in the absence of a departure for extraordinary rehabilitation is 188 to 235 months.[1]

*Discussion*

Ordinarily, a defendant must be sentenced within the ranges established in the Sentencing Guidelines unless the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The guidelines apply only to a "heartland" of typical cases: "Atypical cases were not 'adequately taken into consideration,' and factors that may make a case atypical provide potential bases for departure." *Koon v. United States,* 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citations omitted); *see also* U.S.S.G. § 5K2.0 (permitting departures for aggravating or mitigating circumstances not adequately considered by guidelines).

In *United States v. Sally,* 116 F.3d 76 (3d Cir.1997), the Third Circuit held "that post-offense rehabilitation efforts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the ef-

---

1. According to the Presentence Report, which has not been contested, Kane was convicted of burglaries of dwellings on January 15, 1985, and March 4, 1991. *See* Presentence Report ¶¶ 47–48, 51. The Sentencing Guide-

lines specifically include such burglaries as "crimes of violence" under the career offender guideline. *See* U.S.S.G. § 4B1.2 app. note 1.

forts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." *Id.* at 80. Before a court may grant such a departure, it must make a specific finding that the "rehabilitation efforts are remarkable and indicate real, positive behavioral change" such that they are "substantially in excess of that ordinarily present." *Id.* at 81. The Third Circuit stressed that departures for extraordinary rehabilitation must be given only in situations in which a defendant has made specific steps to "repair and rebuild" his life. *Id.*

The *Sally* holding's emphasis on a change in behavior suggests that it is inappropriate to grant a departure for extraordinary rehabilitation when the defendant simply engages in good conduct following conviction. For example, in *United States v. Jaramillo,* 4 F.Supp.2d 341 (D.N.J. 1998), the court declined to grant a downward departure for extraordinary rehabilitation when the defendant's concededly excellent prison record, which included job-training, adult education coursework, and tutoring other inmates, was consistent with his pre-incarceration work experience and educational attainment. *See id.* at 350–51; *see also United States v. Faulks,* Crim.A. No. 96–299–01, 1998 WL 964223, at *4 (E.D.Pa. Oct.9, 1998), *rev'd on other grounds,* 201 F.3d 208 (3d Cir.2000) (holding no departure warranted when primary basis for request was admittedly excellent record at prison, consisting of coursework, mentoring, working with prison to develop job programs; stating that defendant had not overcome any particular hardship in so doing).[2] The court should also look to the voluntary nature of the defendant's actions. *See United States v. Leon,* 2 F.Supp.2d 592, 595 (D.N.J.1998) (declining to grant departure when large amount of restitution paid simply complied with settlement governing applicable civil penalties and defendant's decision to forego claims

against government resulted from hard bargaining).

Michael Kane is a forty-three year-old man who has used and abused illegal drugs and alcohol for at least twenty-five years. His current crimes followed a period of particularly severe addiction: after losing his lunch truck business as a result of his addiction, he began selling drugs to obtain money for his own habit. While under supervision of Pretrial Services, he tested positive for drug use several times between December 1998 and May 1999. However, following Mr. Kane's admittance into the Mirmont Treatment Center on May 21, 1999, he has not tested positive for drug use and has submitted twenty-one negative urine samples. *See* Pretrial Serv. Report of Mar. 21, 2000, at 2 (filed by Order of Mar. 21, 2000); Dr. Holly Grishkat's Report of Mar. 16, 2000 (filed by Order of Mar. 21, 2000). He completed the Mirmont program on June 18, 1999, and, since that time, he has attended outpatient treatment three to four times a week with Dr. Grishkat and has seen a psychiatrist once a month for medication. He has also participated in Alcoholics Anonymous and Narcotics Anonymous meetings.

It is clear that the time Mr. Kane spent at Mirmont helped him immensely. For example, on October 12, 1999, Dr. Alex Siegel, a clinical and forensic psychologist, evaluated Mr. Kane's "current cognitive and emotional function, ma[d]e treatment recommendations for him to follow, and ... offer[ed] a professional opinion for his rehabilitation from drugs and alcohol." *See* Def.Sent.Mem. at Ex. A. Dr. Siegel stated, "Prior to entering Mirmont, Mr. Kane never took his sobriety seriously and never accepted responsibility for it. With the possible exception of previous incarcerations, this is Mr. Kane's longest period of sobriety." *Id.* Dr. Siegel acknowledged that Mr. Kane was in the early stages of

---

**2.** The court does not go so far as to suggest, however, that the simple fact that rehabilitative efforts will benefit the defendant in some way is enough to deny a motion for departure: were this the standard, such departures would be almost inherently unattainable.

treatment but considered him to have made "significant strides." *Id.*

Dr. Grishkat's notes recounting Mr. Kane's treatment from June 30, 1999, until December 30, 1999, also support this conclusion. *See* Def.Sent.Mem. at Ex. C. While Mr. Kane resisted acknowledging the full extent of his substance abuse problems, he also made genuine efforts to change his behavior, with a considerable degree of success. He stopped using drugs, he attempted to change his friends and associates, and he gradually reduced his alcohol consumption.[3] In the course of this treatment, Mr. Kane also weathered a change in attorneys that obviously affected him strongly, as well as the feared repercussions of having himself and his brother publicly labeled as "informants" by his former associates.

The court also acknowledges the most recent reports submitted by Pretrial Services and Dr. Grishkat. Dr. Grishkat's report, dated March 16, 2000, summarizes the treatment provided to Mr. Kane over the past nine months. Her report notes that he has failed to attend a number of appointments but lists the following areas of progress:

1. Michael reports no drug use since beginning of treatment here at PCHD. This concurs with reports from Donna Makowiecki[, Pretrial Services,] on clean urine screens.
2. Michael reports significant reduction in drinking of alcohol. No ongoing consumption. Admits to drinking 2–3 beers at special occasions e.g. New Years, Superbowl only.
3. Michael recognizes the health risk that his smoking causes. However, his attempts to quit have been unsuccessful to date.
4. Michael recognizes the seriousness of his physical problems and this has been a prime motivator for him to remain drug-free.[4]

*Id.* (filed by Order of Mar. 21, 2000). Dr. Grishkat's report notes that following areas in which improvement is needed:

1. Inability to form a trusting relationship with others.
2. Michael externalizes the cause of his problems. Has trouble recognizing his part in things.
3. Michael holds loyalty and respect as prime directives and while honorable, it is to such an extent that it can be to the detriment of himself.
4. Inability to connect with or to find usefulness in AA or NA.
5. Anger Management
6. Anxiety Management
7. Can converse about fairly superficial issues but avidly avoids/denies the presence of deeper issues.

*Id.*

Dr. Grishkat's conclusions are reinforced by the report submitted by Pretrial Services. This report stresses that Mr. Kane has missed appointments with Pretrial Services and with his psychologist "routinely" and notes that Dr. Grishkat contacted Pretrial Services because of her frustration with certain aspects of his therapy. Although he claimed that many of the missed appointment were for physical ailments, Mr. Kane failed to provide documentation of these reasons. This report also acknowledges, however, that he has tested negative for drugs since the end of

---

**3.** The government contended that Mr. Kane should not receive a departure because he is using or has used alcohol as a substitute for illegal drugs. The court credits Mr. Kane's testimony that he has not used alcohol since the Superbowl, and that, even prior to that time, he had begun reducing his intake. His testimony was corroborated by the reports submitted by Pretrial Services and Dr. Grishkat.

**4.** It is undisputed that Mr. Kane has severe physical problems which include diabetes, seizure disorder, back problems, hepatitis, and liver damage. The court credits the testimony suggesting that these physical problems hampered Mr. Kane's ability to seek employment or to engage in other gainful pursuits.

his stay at Mirmont and that he has largely ceased alcohol consumption, primarily because of his physical problems. This report states that he has lessened his involvement in various Twelve Step meetings but that he has become more involved with his family and has attempted to find employment; he has been prevented from doing so because of his significant medical problems. *See* Pretrial Serv. Report.

Finally, the testimony of the witnesses presented at the hearing support Mr. Kane's contention that he has markedly changed his life. Mr. Kane's own testimony largely confirmed the written materials he had provided with his motion: following his stay at the Mirmont program, he has not tested positive for drug use, and he has changed many aspects of his behavior that were associated with drug use. He continued using alcohol to some extent following his release from Mirmont, but he has not used alcohol since the Superbowl. Gerard McNulty, Mr. Kane's sponsor at NA and AA meetings, and Helen Kane, the defendant's sister, both stated that Mr. Kane was a "different person" than he had been at the time of the arrest. Mr. McNulty testified that Mr. Kane has made great strides since his initial involvement with the AA and NA programs, and he contended that it was "extraordinary" for an individual who had abused drugs for so many years even to want to quit. Similarly, Helen Kane testified that he has become much more involved with his son and his grandson and that he has tried to change his behavior by disassociating from his old friends and his old environment. Ms. Kane also testified to the support the defendant lends her: she was seriously injured in an industrial accident some years ago, and she explained that the defendant helps her perform household tasks that she would otherwise be unable to do and that he conscientiously checks that she is safe before leaving her alone.

In short, the court credits the evidence that Mr. Kane has not used drugs for approximately ten months, that he has made steps towards acknowledging his addiction, and that he has changed his lifestyle and his behavior to a significant degree. In particular, he has reconnected with his sister, his son, and his grandson. These steps are noteworthy precisely because Mr. Kane has abused illegal drugs and alcohol for more than two decades.[5] While he has an extensive criminal history, the majority of those crimes were for theft offenses apparently related to his addiction. While Mr. Kane's efforts would not qualify as "extraordinary" in every case or even in most cases, when viewed in comparison to Mr. Kane's extremely lengthy period of addiction, the court concludes that he deserves a downward departure in recognition of the sincere effort he has made to repair his life. *See United States v. McBroom,* 991 F.Supp. 445, 450–51 (D.N.J.1998) (granting downward departure for rehabilitation to defendant convicted of possessing child pornography after concluding that involvement in AA, comparatively lengthy period of sobriety, compliance with treatment regimen, and continuous involvement in therapy indicated strong commitment to overcoming various addictions and disorders). While the court acknowledges that Mr. Kane still has a very long and tenuous path to recovery ahead of him, he has already made significant steps towards that goal. *Cf. United States v. Conti,* Crim.A. No. 95–473–6, 1998 WL 257848, at *2–3 (E.D.Pa. May 21, 1998) (declining to grant departure when defendant had not yet entered primary drug treatment program; court was unwilling to depart based on future conduct, and short-term program did not, on its own, constitute extraordinary rehabilitation).

The court is not blind to the significant problems still facing Mr. Kane or to the

---

**5.** As the Presentence Report states, "Mr. Kane has an extensive history of substance abuse since his teenage years. Mr. Kane has abused the following drugs: marijuana; cocaine; alcohol; crack cocaine; and meth-amphetamine. The defendant conceded to experimenting with heroin, hallucinogens, inhalants, and barbiturates, but denied daily or frequent use of the substances." Presentence Report ¶ 74.

less commendable aspects of his behavior during his release pending sentencing. The government objected to a departure for several reasons, most of which related to its contention that Mr. Kane has not complied with many conditions of his release and that he has not sincerely engaged in recovery. To some degree, the court concurs. The defendant has missed numerous meetings with Pretrial Services. His attendance at AA and NA meetings has been sporadic at best, and he has missed some appointments with his therapist. The defendant is in extremely poor physical health, and the court credits his statement that this has hampered his ability to attend some obligations; however, he had no real excuse for his failure to inform anyone as to why he could not attend. Nor could he explain why he did not procure a doctor's note following Pretrial Services' request that he do so. These missed meetings would be less serious if the court did not also credit the government's contention that Mr. Kane has not fully engaged with some aspects of his therapy: as the government pointed out at the hearing and in its written submissions, Dr. Grishkat expressed a great deal of frustra-

tion with Mr. Kane's "gameplaying" during various therapy sessions.[6]

These lapses, while significant, must be viewed in the context of Mr. Kane's former behavior. The bulk of the testimony as well as Dr. Grishkat's written report from this month state that Mr. Kane has made significant progress; most notable is Mr. Kane's success in remaining drug-free for almost a year after more than twenty years of addiction. Drug treatment is an extremely difficult process, and it is not likely that anyone who has abused drugs for as many years as Mr. Kane would be able immediately to abandon all aspects of his former life, regardless of his good intentions. As another opinion stated in addressing the situation of a long-time addict: "Fourteen years of heroin addiction cannot be cured overnight. The process is gradual and trying, requiring both mental and physical support." *United States v. Maier,* 777 F.Supp. 293, 294 (S.D.N.Y. 1991). It is for this reason that the court finds the cases cited by the government to be distinguishable: either they do not address a situation in which an individual actually stopped using drugs, or they simply do not govern the court's decision in this case.[7] While the court fully acknowl-

---

**6.** In its written submissions, the government also contended that the court should not grant a downward departure because Mr. Kane changed his life primarily in hopes of avoiding a lengthy prison sentence. In support, the government relies primarily on Dr. Grishkat's treatment notes, in which she makes several references to Mr. Kane's fear of a long sentence. The government also refers to several sessions in which Dr. Grishkat wrote that Mr. Kane was not taking therapy seriously. The court concludes, however, that even if one of Mr. Kane's goals is lessening his term of imprisonment, this does not preclude a departure: it would be unrealistic to believe that any defendant would be so committed to recovery for its own sake that he or she would not consider its potential effect on a lengthy prison term.

**7.** For example, while the government relies on *United States v. Herman,* 172 F.3d 205, 209 (2d Cir.1999), for the proposition that Mr. Kane's long criminal history means that he should not receive a departure, this opinion reversing a downward departure for extraordinary rehabilitation rested heavily on a con-

clusion that the district court had erred factually in finding that the defendant had been drug-free for two years, a conclusion that undercut the district court's other findings.

The government also argues that the defendant in *Sally* was a much better candidate for a downward departure and this case is more appropriately compared to the unreported decision of *United States v. Gallagher,* Crim.A. No. 95–502, 1998 WL 42282, at \*5 (E.D.Pa. Jan.9, 1998), in which the court declined to grant a downward departure·for a defendant who assisted inmates with GEDs, lost 75 pounds, compiled a stellar work record at prison, and applied one-half of his pay to restitution. The fact that Mr. Kane's circumstances are distinct from those of Sally, who was a very young offender with a very limited criminal history, is not dispositive, as each case must be considered on its own facts. It is precisely because of Mr. Kane's extreme addiction and the lengthy crimes committed in conjunction with those addictions that his present behavior is noteworthy. *Gallagher* itself is of limited applicability given its procedural posture. The motion for a downward

edges the seriousness of Mr. Kane's errors, it concludes that they do not preclude a departure, although they are such that the court would not depart below the 120 month sentence issued from the bench in any event.

*Conclusion*

Michael Kane has demonstrated a genuine commitment to repairing his life which has been sadly damaged by his long-time abuse of drugs and alcohol. The court is not so naive as to assume that the defendant will be able to renounce twenty-five years of destructive behavior easily, and the court fully acknowledges that some aspects of his treatment have been less successful than others, particularly with respect to his attendance at various meetings. However, a fair evaluation of his present behavior indicates that Mr. Kane has concretely changed his behavior, most obviously in his thus far successful efforts to stop using a myriad of illegal drugs and alcohol. This success warrants a downward departure.

## ORDER

**AND NOW,** this 24th day of March, 2000, upon consideration of Defendant's Motion for a Downward Departure pursuant to U.S.S.G. § 5K2.0, the response thereto, and after a hearing, it is hereby **ORDERED** that the Motion is **GRANTED.**

departure in that case was inappropriately raised in the context of a section 2255 habeas corpus petition, and the court noted that it did not believe it was allowed to depart. *See id.* at *5. Consequently, the discussion of the departure was cursory.