**UNITED STATES of America, Plaintiff,**

v.

**Robert LANGE, Defendant.**

**No. 02–CR–139.**

United States District Court, E.D. Wisconsin.

Jan. 9, 2003.

---

Lennie Lehman, for Plaintiff.

Nancy Joseph, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Defendant Robert Lange pled guilty to distributing more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) & 841(b)(1)(B). Defendant is 58 years old and has no criminal history points under the sentencing guidelines.[1] He arrived in this court as a result of his addiction to crack cocaine.

Defendant began using cocaine in 1994 as a means of coping with the death of his father. He used the energy he gained from the drug to make the funeral arrangements, but over the next five years he began using cocaine more often. He progressed to smoking crack cocaine, first weekly, then daily. He would go on crack cocaine "binges," smoking up to an ounce and suffering blackouts. He would use for three or four days straight, sleep for a day or two, then start over.

Defendant began selling small quantities of crack out of his home in Waukesha, Wisconsin. He was arrested after several sales to a confidential informant and undercover officer. When he first appeared in this court it was obvious that he was an out-of-control addict. Magistrate Judge Callahan allowed defendant to be released to the Genesis Residential Treatment Program and, after some early problems, defendant made a remarkable transition. Defendant is clearly not the same man as when he was arrested last June.

The parties agree that under the sentencing guidelines defendant's offense level is 27 and his criminal history category I, producing an imprisonment range of 70 to 87 months. Defendant requests a downward departure from that range under U.S.S.G. § 5K2.0 based on his post-offense rehabilitative efforts. In this decision I address the motion.

### I.

The district court has discretion to "depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Koon v. United States,* 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)).

The Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure, "encouraged" bases for departure, and "discouraged" bases for departure. *See id.* at 93–95, 116 S.Ct. 2035. A court confronted with a motion for a downward departure should first determine what factors make the case unusual, taking it out of the "heartland" of typical cases, and then whether the Commission has forbidden, encouraged, or discouraged departures based on those factors. *Id.* at 95, 116 S.Ct. 2035.

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the appli-

---

1. His prior criminal record consists of several convictions from the 1960s, too old to be counted under U.S.S.G. § 4A1.2(e), and an issuance of worthless check conviction from 2001, which was not counted under § 4A1.2(c)(1).

cable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland.

*Id.* at 95–96, 116 S.Ct. 2035 (internal quote marks and citations omitted).

## II.

■ The court may depart based on the defendant's post-offense rehabilitative efforts. *See United States Sentencing Commission Guidelines Manual, Supplement to Appendix C* 75 (2002) (amendment 602);[2] *see also United States v. Newlon,* 212 F.3d 423, 424–25 (8th Cir.2000); *United States v. Cornielle,* 171 F.3d 748, 753–54 (2d Cir.1999); *United States v. Jones,* 158 F.3d 492, 503 (10th Cir.1998); *United States v. Brock,* 108 F.3d 31, 35 (4th Cir. 1997); *United States v. Jones,* 233 F.Supp.2d 1067, 1069 (E.D.Wis.2002). However, because such efforts are a factor already considered under U.S.S.G. § 3E1.1, which allows for an offense level reduction for acceptance of responsibility, a defendant seeking a departure on this basis must "show that those efforts were 'exceptional enough to be atypical of the cases in which the acceptance-of-responsibility reduction is usually granted.'"

---

**2.** Amendment 602 created new guideline § 5K2.19, which forbid departures based on post-*conviction* rehabilitative efforts. But the Commission was careful to note that the amendment did "not restrict departures based on extraordinary post-offense rehabilitative efforts prior to sentencing. Such departures have been allowed by every circuit that has ruled on the matter post-*Koon*." *Id.*

*Newlon,* 212 F.3d at 424 (quoting *United States v. DeShon,* 183 F.3d 888, 889 (8th Cir.1999)).[3]

## III.

■ Defendant argues that his post-arrest efforts at turning his life around, specifically with regard to substance abuse, support a departure. I agree.

Defendant was arrested on June 12, 2002. Based on the testimony adduced at earlier hearings and the information in the PSR, it is apparent that defendant had been heavily using crack cocaine just prior to his arrest. Following his initial appearance on this matter, Magistrate Judge Callahan allowed defendant to be released to the Genesis Residential Treatment Program. (PSR ¶ 2.) However, on July 12, 2002 a violation report was submitted based on positive urinalysis results on June 21 and 27. Judge Callahan issued an arrest warrant on July 15, and defendant was detained. On July 26, however, Judge Callahan allowed defendant to return to Genesis. (PSR ¶¶ 4–6.)

Since that time defendant has done remarkably well. First, he completed all elements of the program at Genesis and was released at the end of October. While at Genesis, defendant finished all of his assignments, earned a leadership position within his treatment group, and was allowed to escort other residents off grounds. (PSR ¶ 6, 96.) He was reported to have been a contributor at group meetings and attended to personal issues in one-on-one counseling sessions. Specifi-

---

**3.** Under the *Koon* test, this "special factor" is best analyzed as "encouraged" but "already taken into account" under § 3E1.1. Therefore, it must be present "to an exceptional degree." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035.

cally, he discussed with his counselor his acceptance of his criminal conduct and his desire to stop hurting himself by using drugs. (PSR ¶ 96.)

From July 3, 2002 until October 30, 2002, defendant submitted to 21 random drug tests, all of which were negative. On October 28, 2002, Judge Callahan modified defendant's release conditions to allow him to reside with his daughter, and he left Genesis on October 30. Since that time, defendant has continued to submit to drug tests, all of which have been negative, and he has commenced outpatient treatment. (PSR ¶ 6.) Since the initial violations of the conditions of release in June 2002, defendant has submitted to no less than 29 drug tests, all negative for the presence of any controlled substances. (PSR ¶ 97.) It is significant that defendant remains drug free even after leaving the structured environment of Genesis. Relapses during recovery are the rule rather than the exception, see United States v. Maier, 975 F.2d 944, 945 (2d Cir.1992), and defendant's ability to remain drug free for six months following such a long period of drug abuse is extraordinary.

Sincere efforts at drug and alcohol treatment can provide a basis for a downward departure. See, e.g., Newlon, 212 F.3d at 424; Cornielle, 171 F.3d at 754 (citing Maier, 975 F.2d at 948); United States v. Whitaker, 152 F.3d 1238, 1239–41 (10th Cir.1998). In Newlon, the court affirmed a departure where the defendant over the span of about 20 days spent 85 hours in a program to treat his alcohol and narcotic addictions. 212 F.3d at 424. Defendant's efforts in the present case were much more substantial. He completed the respected program at Genesis—one to which defendants are regularly referred by the judges of this court—that lasted several months.

Defendant's efforts also exceed those of the defendant in Maier, perhaps the leading case on this type of departure. The defendant's efforts at rehabilitation there were described as "uneven," and she failed drug tests administered by pre-trial services. 975 F.2d at 945. However, based on her genuine desire to rehabilitate herself and continuing efforts in that regard, the district judge granted a departure, and the court of appeals affirmed. Id. at 948–49. Defendant Lange has passed his drug tests and his efforts have been exemplary since the commencement of his second stay at Genesis. See United States v. Ortiz, 100 F.Supp.2d 295, 297 (E.D.Pa.2000) (departing where defendant entered drug treatment following his arrest and did not use illegal substances after completing the program, submitting 22 negative urine samples).

Second, defendant has been fully compliant with the conditions of his release since Judge Callahan gave him a second chance at Genesis. Although departures should not be granted just because a defendant does what is expected and required of him while awaiting trial, this is a relevant factor when considering a departure on this basis. See, e.g., DeShon, 183 F.3d at 890; Jones, 158 F.3d at 503. Particularly when complying with the conditions of release means fighting a powerful addiction, courts should take notice.

Third, defendant appears to be making genuine efforts to reconnect with his family. His children have noted the dramatic change they have seen in their father over the past six months. (PSR ¶¶ 81, 83.) (The change is also evident to the court.) I consider family support a crucial component of rehabilitation, and defendant's efforts to re-connect with his family bode well for his future prospects. See Jones, 233 F.Supp.2d at 1071; see also United

States v. Kapitzke, 130 F.3d 820, 823 (8th Cir.1997).

In United States v. Kane, 88 F.Supp.2d 408 (E.D.Pa.2000), the court departed downward under very similar circumstances. The defendant there was 43 years old and had abused drugs for many years; his current offense followed a period of severe addiction, which was triggered by the stressful loss of his business. Early in the period of his pre-trial release, he tested positive for drug use. However, he then entered a treatment center for two months, completed the program, and commenced out-patient treatment. Id. at 409.

The court noted that the program helped the defendant immensely. Id. He tested negative for drugs following his stay in the treatment center. Id. at 410–11. Witnesses indicated that defendant had become a different person than he had been at the time of his arrest, and that he had reconnected with his son and grandson. Id. at 411. Therefore, despite the fact that the defendant had not been fully compliant with all conditions of his release and had missed some meetings with pre-trial services, the court departed downward based on his post-offense rehabilitative efforts. Id. at 412–13. In the present case, defendant Lange has done even better than the defendant in Kane because he has been fully compliant with the conditions of release since completing treatment. See also United States v. Wilkes, 130 F.Supp.2d 222, 240–41 (D.Mass.2001) (departing where, after a decade of severe alcohol and drug abuse, defendant obtained counseling, remained drug-free, and re-established meaningful personal and family relationships); United States v. Hernandez, No. 98–CR–1316, 2001 U.S. Dist. LEXIS 897, at *3 (S.D.N.Y. Feb.2, 2001) (departing where defendant entered treatment program after her arrest, submitted negative drug tests, and reunited with her family).

Fourth, I am impressed by the level of insight displayed by defendant's written allocution. He seems to understand what his drug-related activities were doing both to the community and himself, and he seems genuinely committed to becoming a productive member of society and helping others avoid his mistakes. He expressed similar sentiments to his counselor at Genesis, which shows that he is not simply trying to make a favorable impression on the sentencing judge. The Seventh Circuit has held that a district judge may depart based on a defendant's extraordinary expression of remorse, United States v. Jaroszenko, 92 F.3d 486, 491 (7th Cir. 1996), and I consider defendant's insight into his conduct and its effects to be unusual.[4]

Based on this combination of factors, I conclude that defendant has made extraordinary efforts to rehabilitate himself, well-beyond those undertaken by defendants who commonly receive the § 3E1.1 reduction. He has made concrete gains in turning his life around. See United States v. Sally, 116 F.3d 76, 81 (3d Cir.1997).[5]

---

4. "Since the unlikelihood of recidivism is a factor that can be argued in support of a downward departure for extraordinary post-offense rehabilitative efforts, remorse can be highly persuasive by itself or in connection with post-offense rehabilitative efforts. Moreover, it has the extra added advantage of often being true." Alan Ellis, Answering the "Why" Question: The Powerful Departure Grounds of Diminished Capacity, Aberrant Behavior, and Post–Offense Rehabilitation, 11 Fed. Sen. Rptr. 322, 326 (May/June 1999).

5. Sally was decided prior to the Commission's adoption of § 5K2.19 and concerned the defendant's post-conviction rehabilitative efforts. Nevertheless, Sally remains instructive on the showing needed to gain a departure for post-offense efforts.

The government opposes the motion, arguing that defendant simply completed the program ordered by the court. Whether the defendant entered treatment voluntarily is certainly a factor the court can consider. *Kane*, 88 F.Supp.2d at 409. If the defendant does nothing more than grudgingly comply with the conditions set by the court, he is not a candidate for a downward departure. But when the defendant obviously embraces treatment and out performs those usually seen by the court, he may receive consideration.

Defendant Lange expressed a desire to obtain help with his addiction immediately upon his arrest. In a post-arrest statement made to Detective Kennedy of the Waukesha County Metro Drug Unit, defendant indicated that he was grateful that he had been arrested because he had tried to kick drugs on his own without success. When given the opportunity to obtain treatment by the court defendant made the most of it.

The government also notes that defendant failed two drug tests in June 2002. But as Judge Katz has noted, "Drug treatment is an extremely difficult process, and it is not likely that anyone who has abused drugs for as many years as [defendant] would be able immediately to abandon all aspects of his former life, regardless of his good intentions." *Id.* at 412; *see also Maier*, 975 F.2d at 945 (quoting expert testimony that relapses during recovery are the rule rather than the exception).[6] The remarkable thing about this case is that after those two early slips, defendant has submitted 29 negative tests and has

been clean for six months. For someone with such a powerful addiction, this is extraordinary. I reject the government's contention that defendant's efforts are not atypical.

Finally, the government argues that defendant should not receive a departure, even if his efforts were extraordinary, because of his prior criminal record, which includes several convictions from the 1960s and an uncounted worthless check offense from 2001. While I have the discretion to consider prior offenses falling outside the fifteen and ten year windows of U.S.S.G. § 4A1.2(e), *see* § 4A1.2 cmt. n. 8, in this case I do not find that these convictions bear upon the issue before the court— whether defendant has taken concrete steps to turn his life around. The convictions from the 1960s are far too remote in time and the worthless check conviction is dissimilar to the instant offense.[7] Therefore, the argument that I should not depart because of defendant's prior offenses is unpersuasive.

However, before deciding whether to exercise my discretion and depart I must consider the factors set forth in 18 U.S.C. § 3553(a), including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide for the defendant's rehabilitative needs; (3)

---

**6.** The district court in *Maier* stated: "Fourteen years of heroin addiction cannot be cured overnight. The process is gradual and trying, requiring both mental and physical support." *United States v. Maier*, 777 F.Supp. 293, 294 (S.D.N.Y.1991), *aff'd*, 975 F.2d 944 (2d Cir.1992).

**7.** The government also argues that it gave defendant a substantial break in the plea agreement. Obviously, the court is not a part of those negotiations, and I am not aware of any limitation in the plea agreement on defendant's right to bring the present motion.

the kinds of sentences available; (4) any pertinent policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to the victims of the offense.

This was a serious offense involving a substantial amount of crack cocaine. However, I note that the nature of the offense and defendant's prior record allowed him to obtain an offense level reduction under the safety valve provisions of U.S.S.G. §§ 5C1.2 & 2D1.1(b)(6). Thus, no violence was involved, there is no indication that defendant possessed a dangerous weapon, and he has no criminal history points. So long as defendant maintains sobriety, he is not someone from whom society must be protected.[8] His imprisonment range is 70–87 months, and even with a modest departure he faces a substantial amount of time in prison—sufficient to reflect the seriousness of the offense and provide just punishment. The Commission has expressed its approval of this type of departure in amendment 602 to the guidelines, and reducing defendant's sentence would not create an unwarranted sentencing disparity—rather it serves to reward a defendant who has made significant efforts to ensure that he does not reoffend. The Commission has also approved consideration of a defendant's likelihood of recidivism. *See* U.S.S.G. § 4A1.3. Therefore, I will grant the motion and depart downward.

Once a court decides to depart the extent of the departure is a matter within the court's discretion and will be upheld so long as it is reasonable and adequately reflects the structure of the guidelines. *United States v. Cruz–Guevara,* 209 F.3d 644, 647 (7th Cir.2000); *see also* 18 U.S.C. § 3742(e)(3). While there are no hard and fast rules to govern the extent of a departure, the Seventh Circuit has approved a method that involves calculating the defendant's sentence by analogy to existing guideline provisions. *Cruz–Guevara,* 209 F.3d at 648. I will grant defendant a two level departure, which equals the reduction allowed by § 3E1.1(a) and provides sufficient reward without unduly depreciating the seriousness of the offense.

The revised imprisonment range is 57–71 months. I sentence defendant to 57 months in prison. Other conditions of the sentence appear in the judgment.[9]

## IV.

**THEREFORE, IT IS ORDERED** that defendant's motion for a downward departure is **GRANTED**.

---

8. In his post-arrest statement, which I consider credible, defendant stated that he was proud that he did not sell drugs to juveniles or first time users, and that he did not solicit people to buy drugs; rather, those who wanted to purchase cocaine came to him.

9. Defendant's offense of conviction carries a five year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(B). However, because the safety valve provision of U.S.S.G. § 5C1.2 applies, I may depart below the statutory minimum sentence. *See United States v. Williams,* 202 F.3d 959, 964 (7th Cir.2000); *see also United States v. Pratt,* 87 F.3d 811, 813 (6th Cir.1996).