In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3043

United States of America,

Plaintiff-Appellant,

v.

Julio C. Cruz-Guevara,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 894--David H. Coar, Judge.


Argued January 18, 2000--Decided March 23, 2000


Before Easterbrook, Kanne and Diane P. Wood, Circuit
Judges.

Kanne, Circuit Judge. In July 1998, Julio Cruz-
Guevara was deported from the United States as a
result of a conviction for an aggravated felony.
In October 1998, Cruz-Guevara illegally re-
entered the United States. He was found in the
United States in November and subsequently
pleaded guilty to the charge of being found in
the United States after having been removed
subsequent to conviction for an aggravated
felony, pursuant to 8 U.S.C. sec. 1326(a).
Despite an imprisonment range of seventy to
eighty-seven months based on his offense level
and criminal history category, the district court
sentenced Cruz-Guevara to only twenty-four months
imprisonment. The government appeals this
downward departure, and we vacate the sentence
and remand to the district court for re-
sentencing.

I.  History

Julio Cruz-Guevara first entered the United
States from Mexico in 1980 at age two. Between
his immigration to this country and his
deportation in 1998, he returned to Mexico only
once, at age eight, to attend the funeral of his
grandmother. During the entirety of his initial
residence in the United States, Cruz-Guevara was
a legal permanent resident.

Despite his youth, Cruz-Guevara has already amassed a lengthy criminal history, including five prior convictions. At sixteen, Cruz-Guevara was convicted of involvement in a fight after a gang-related shouting match, and he was also convicted of writing graffiti at a city park. The next year, Cruz-Guevara was convicted of possession of a controlled substance. The same year he was also convicted of aggravated criminal sexual abuse of a minor, in this case statutory rape of a sixteen-year-old girl. For these final two offenses, Cruz-Guevara was sentenced to serve 116 days and 120 days, to be served concurrently, in a state prison facility. During the period of his incarceration, the INS filed a Notice to Appear, seeking to remove Cruz-Guevara from the United States because of his state felony conviction.

In June 1998, an immigration judge ordered the removal of Cruz-Guevara, and Cruz-Guevara did not appeal. On July 2, 1998, Cruz-Guevara was removed to Mexico from the United States. In Mexico, Cruz-Guevara was friendless and alone. Unable to find any relatives in Mexico, Cruz-Guevara could not secure permanent housing or a job. As his family stated, "he might as well have gone to Mars."

Cruz-Guevara was able to acquire a falsified alien registration card, and he used this card illegally to re-enter the United States in October 1998. A month later in Chicago, Cruz-Guevara was arrested and detained for throwing a bottle at a police car. Cruz-Guevara was convicted of aggravated assault and criminal damage to property on the basis of this arrest. Shortly thereafter, Cruz-Guevara was released into federal custody, where he was charged for illegally re-entering the United States. He initially pleaded not guilty but later withdrew this plea and entered a guilty plea, which the district court accepted.

Cruz-Guevara's total offense level for purposes of sentencing was twenty-one, composed of a base offense level of eight pursuant to U.S.S.G. sec. 2L1.2(a), an enhancement of sixteen points pursuant to sec. 2L1.2(b)(1)(A) because his removal was based on an aggravated felony conviction and a reduction of three points pursuant to sec. 3E1.1 for acceptance of responsibility. Based on his prior convictions, the pre-sentencing report established that Cruz-Guevara's criminal history category was V, which resulted in a guideline imprisonment range of seventy to eighty-seven months.

On July 12, 1999, the district court held a

hearing in which the court informed the parties that it had received a letter from the Cruz-Guevara family, which the court considered "an extraordinary act of family solidarity." In the letter, the family declared its intent to sell its home and return to Mexico with Cruz-Guevara on his deportation. The next day at Cruz-Guevara's sentencing hearing, Cruz-Guevara moved for a downward departure from the sentencing guidelines imprisonment range on the basis of extraordinary family circumstances. The government objected to the motion based on the serious nature of the conviction and Cruz-Guevara's prior criminal record. The government also argued that the family's promise could not be enforced, or in the alternative, a downward departure would actually be to the family's detriment because they would have to leave the country sooner.

The district court adopted the facts set forth in the pre-sentencing report and determined that neither party had any objections to this report. Then, the district court granted Cruz-Guevara's motion. It concluded that extraordinary family circumstances and Cruz-Guevara's cultural ties to this country removed the case from the heartland anticipated by the Sentencing Guidelines. The court focused on the extraordinary solidarity demonstrated by the family, Cruz-Guevara's youth and the fact that he had no other connections in Mexico. In light of these factors, the court departed downward from the range of seventy to eighty-seven months, sentenced Cruz-Guevara to twenty-four months imprisonment followed by three years of supervised release and fined him $1,000. The district court did not explain the basis for the extent of its downward departure.

II. Analysis

The government appeals, arguing that the district court abused its discretion by granting the motion for downward departure based on Cruz-Guevara's family circumstances and cultural ties. The government also contends that the district court abused its discretion by departing to an unreasonable extent and by failing to link the extent of its downward departure to the structure of the Sentencing Guidelines. We review a district court's departure for abuse of discretion and accept the findings of fact underlying such a departure unless clearly erroneous. See United States v. Wilke, 156 F.3d 749, 753 (7th Cir. 1998). A district court's determination of the extent of a departure is discretionary, so we review this determination for abuse of discretion. See United States v. Leahy, 169 F.3d 433, 445 (7th Cir. 1999). "We will uphold the extent of the departure taken as

long as it is reasonable and adequately reflects the structure of the Guidelines." United States v. Hogan, 54 F.3d 336, 341 (7th Cir. 1995).

The government claims that the extent of the district court's downward departure, the equivalent of ten offense levels, is patently unreasonable given the deterrent purpose of the sixteen-level enhancement required by U.S.S.G. sec. 2L1.2(b)(1)(A). We disagree. Section 2L1.2(b) (1)(A) requires a sixteen-level increase for unlawfully entering the United States if the defendant "previously was deported after a criminal conviction" and "the conviction was for an aggravated felony." U.S.S.G. sec. 2L1.2(b)(1)(A). In contrast, sec. 2L1.2(b)(1)(B) requires only a four-level increase if the defendant has previously been convicted of "any other felony." U.S.S.G. sec. 2L1.2(b)(1)(B). Because of this disparity, application note 5 to subsection (b)(1)(A) reminds courts that "[a]ggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony." U.S.S.G. sec. 2L1.2 application note 5.

In its argument against the downward departure, the government apparently fails to consider whether a downward departure may have been reasonable on this ground. Cruz-Guevara had committed only one felony offense prior to his deportation, for aggravated criminal sexual abuse of a minor. The facts that underlie his conviction are consensual sex acts engaged by himself, as an eighteen year old, and his sixteen-year-old girlfriend. In analogous circumstances, we indicated that this type of sexual assault may not be a crime of violence or a firearms offense. See United States v. Shannon, 110 F.3d 382, 387 (7th Cir. 1997) (holding that all convictions under Wisconsin sexual assault statute were not per se convictions for crimes of violence). We recently concluded that this type of sexual assault should not be considered an aggravated felony in the immigration context. See Xiong v. INS, 173 F.3d 601, 605 (7th Cir. 1999). If the district court determined that the facts of Cruz-Guevara's conviction did not constitute a crime of violence, the district court could have analogized reasonably from Xiong to determine that Cruz-Guevara's statutory rape conviction should be treated as an ordinary felony, which merits only a four-level increase,

rather than as an aggravated felony, which merits a sixteen-level increase. See U.S.S.G. sec. 2L1.2(b)(1)(A)-(B). Because Cruz-Guevara's term of imprisonment on the statutory rape charge was 116 days, less than half of one year, the district court rationally could have determined that Cruz-Guevara met all the relevant criteria to warrant a downward departure. In such circumstances, a downward departure of only ten levels, rather than the twelve levels that the court might have departed by had it determined that Cruz-Guevara's acts more closely resembled a felony than an aggravated felony, may have been conservative rather than excessive. We do not find the departure unreasonable.

Nonetheless, any departure from the Sentencing Guidelines imprisonment range requires that the extent of the departure be tied to the structure of the Guidelines. See United States v. Scott, 145 F.3d 878, 886 (7th Cir. 1998) ("The law merely requires that district judges link the degree of departure to the structure of the Guidelines and justify the extent of the departure taken."). No "hard and fast rules" govern the determination of the extent of the departure, but we approve of "a method that involves calculating the defendant's sentence by analogy to existing guideline provisions." Leahy, 169 F.3d at 445 (quoting United States v. Horton, 98 F.3d 313, 317 (7th Cir. 1996)). The district court has run afoul of this principle. The court departed downward from seventy to eighty-seven months to twenty-four months without providing any analogy to the structure of the Guidelines. The district court did not justify the extent of its departure. Therefore, its unsupported determination that a ten-level departure from the Sentencing Guidelines was appropriate constitutes an abuse of discretion, and on this basis, we must vacate Cruz-Guevara's sentence and remand for re-sentencing.

Accordingly, on remand the district court must provide an explanation for the extent to which it would depart downward from the total offense level as calculated in the pre-sentencing report. The court should compare the seriousness of the mitigating factors at hand with those that the commission contemplated. See Hogan, 54 F.3d at 342. If the court determines that the facts that underlie Cruz-Guevara's aggravated felony conviction more closely resemble a felony than an aggravated felony, then the court should analogize from the Guidelines and choose the extent of its departure accordingly.

Because we find that the district court abused its discretion by failing to link its departure to the structure of the Guidelines, we will not

discuss at length the question whether the court's bases for downward departure constituted an abuse of discretion. We note, however, that "dissatisfaction with the available sentencing range . . . is not an appropriate basis for a sentence outside the applicable guideline range." U.S.S.G. sec. 5K2.0, comment; see also United States v. Seacott, 15 F.3d 1380, 1389 (7th Cir. 1994). Thus, a simple determination that a sentencing range is "too harsh" would be an impermissible basis on which to depart downwards. In addition, we observe that the district court's construction of the "family circumstances" basis for departure, while not clearly an abuse of discretion, is a substantial deviation from the traditional purpose of the departure, which is to grant leniency to a convict in order to allow him to fulfill his responsibilities to his dependent family. See, e.g., United States v. Owens, 145 F.3d 923, 928-29 (7th Cir. 1998); United States v. Carter, 122 F.3d 469, 474 (7th Cir. 1997); United States v. Canoy, 38 F.3d 893, 906 (7th Cir. 1994).

III.  Conclusion

Because the district court failed to explain the basis for the extent of its downward departure, we VACATE the sentence imposed by the district court and REMAND for further proceedings.