**UNITED STATES of America,**
**Plaintiff,**

v.

**Braderick JONES, Defendant.**

**No. 01–CR–193.**

United States District Court,
E.D. Wisconsin.

Dec. 3, 2002.

Adam C. Essling, Milwaukee, WI, for Plaintiff.

Mario F. Gonzales, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Defendant Braderick Jones pled guilty to a one count information charging that between January 1, 1995 and September 14, 1999 he conspired with others to distribute and possess with intent to distribute marijuana. Essentially, defendant, along with other members of the Gangster Disciples street gang, ran several marijuana houses in Racine, Wisconsin.

A pre-sentence report (PSR) was prepared, which indicated that defendant's offense level under the sentencing guidelines was 20 and his criminal history category VI, creating an imprisonment range of 70–87 months. However, because the offense of conviction carried a statutory maximum penalty of 60 months, 21 U.S.C. § 841(b)(1)(D), that became the guideline sentence. U.S.S.G. § 5G1.1(a).

The parties agreed on the applicable guidelines, but defendant moved for a downward departure based on his extraordinary post-offense rehabilitative efforts and his extraordinary family circumstances. In this decision I address the motions.

## I.

The district court has discretion to "depart from the applicable Guideline range if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Koon v. United States*, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)).

 The Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure, "encouraged" bases for departure, and "discouraged" bases for departure. *See id.* at 93–95, 116 S.Ct. 2035. A court confronted with a motion for a downward departure should first determine what factors make the case unusual, taking it out of the "heartland" of typical cases, and then whether the Commission has forbidden, encouraged, or discouraged departures based on those factors. *Id.* at 95, 116 S.Ct. 2035.

If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it

is sufficient to take the case out of the Guideline's heartland.

*Id.* at 95–96, 116 S.Ct. 2035 (citations and internal quote marks omitted).

### A.

■ Defendant first contends that his efforts at rehabilitation and self-improvement following commission of the instant offense take his case out of the heartland. The Commission has forbidden departures based on post-*sentencing* rehabilitative efforts. U.S.S.G. § 5K2.19; *see United States v. Buckley,* 251 F.3d 668 (7th Cir. 2001).

The Commission determined that post-sentencing rehabilitative efforts should not provide a basis for a downward departure when resentencing a defendant initially sentenced to a term of imprisonment because such a departure would (1) be inconsistent with policies established by Congress under the Sentencing Reform Act, including the provisions of 18 U.S.C. § 36324(b) for reducing the time to be served by an imprisoned person; and (2) inequitably benefit only those few who gain the opportunity to be resentenced *de novo,* while others, whose rehabilitative efforts may have been more substantial, could not benefit simply because they chose not to appeal or appealed unsuccessfully.

*United States Sentencing Commission Guidelines Manual, Supplement to Appendix C* 75 (2002) (amendment 602).

However, section 5K2.19 "does not restrict departures based on extraordinary post-offense rehabilitative efforts prior to sentencing. Such departures have been allowed by every circuit that has ruled on the matter post-*Koon.*" [1] *Id.; see, e.g., United States v. Newlon,* 212 F.3d 423, 424–25 (8th Cir.2000); *United States v. Cornielle,* 171 F.3d 748, 753–54 (2d Cir. 1999); *United States v. Jones,* 158 F.3d 492, 503 (10th Cir.1998); *United States v. Brock,* 108 F.3d 31, 35 (4th Cir.1997); *see also* Alan Ellis, *Answering the "Why" Question: The Powerful Departure Grounds of Diminished Capacity, Aberrant Behavior, and Post–Offense Rehabilitation,* 11 Fed. Sen. Rptr. 322, 325–26 (May/June 1999).

■ Because post-offense rehabilitative efforts are a factor already considered under U.S.S.G. § 3E1.1,[2] which allows for an offense level reduction for acceptance of

---

1. The Seventh Circuit has not recently addressed this issue. In *United States v. Bruder,* 945 F.2d 167, 173 (7th Cir.1991), the court affirmed the district judge's determination that rehabilitative efforts were already taken into account in the acceptance of responsibility reduction under U.S.S.G. § 3E1.1 and should not be relied upon to depart downward. In *United States v. Lewis,* 79 F.3d 688, 693 n. 1 (7th Cir.1996), the court specifically reserved the question of whether such efforts could ever form the basis for a departure. However, these are both pre-*Koon* cases. *Koon* clearly held that any factor not specifically prohibited by the Commission could support a departure. Further, the *Bruder* court relied upon *United States v. Van Dyke,* 895 F.2d 984, 987 (4th Cir.1990) in concluding "that the defendant's rehabilitative conduct was 'equivalent' to acceptance of responsibility." 945 F.2d at 173. In *United States v. Brock,* 108 F.3d 31, 35 (4th Cir.1997), the

Fourth Circuit repudiated *Van Dyke* in light of *Koon.* The Commission cited *Brock* with approval in amendment 602. Finally, the Seventh Circuit has in post-*Koon* cases noted that an exceptional demonstration of acceptance of responsibility can support a departure beyond the § 3E1.1 reduction. *United States v. Gee,* 226 F.3d 885, 900–02 (7th Cir.2000) (affirming downward departure for "non-heartland" acceptance of responsibility); *United States v. Jaroszenko,* 92 F.3d 486, 491 (7th Cir.1996) (reversing and remanding for resentencing where district judge believed he could not depart based on defendant's remorse). Therefore, I have little difficulty in finding that a departure for exceptional post-offense rehabilitation may form the basis for a departure under Seventh Circuit law.

2. Specifically, such efforts are listed as one of eight, non-exhaustive factors the court can consider in determining whether the reduc-

responsibility for the offense, a defendant seeking a departure on this basis must "show that those efforts were 'exceptional enough to be atypical of the cases in which the acceptance-of-responsibility reduction is usually granted.'" *Newlon*, 212 F.3d at 424 (quoting *United States v. DeShon*, 183 F.3d 888, 889 (8th Cir.1999)). The court must make specific factual findings concerning the actions taken by the defendant which demonstrate a commitment to rehabilitation beyond that shown by those usually awarded the § 3E1.1 reduction. *See United States v. Sally*, 116 F.3d 76, 80–81 (3d Cir.1997);[3] *Brock*, 108 F.3d at 35 n. 2.

As the court stated in *Sally:*

[T]here must be evidence demonstrating that a defendant has made concrete gains toward "turning his life around" before a sentencing court may properly rely on extraordinary ... rehabilitation efforts as a basis for a downward departure. Unlike the usual adjustment for acceptance of responsibility where defendants may all-too-often be tempted to feign remorse for their crimes and be rewarded for it, we view the opportunity for downward departures based on extraordinary or exceptional ... rehabilitation efforts as a chance for truly repentant defendants to earn reductions in their sentences based on a demonstrated

commitment to repair and to rebuild their lives.

116 F.3d at 81.[4]

Courts considering such departures have often focused on drug and alcohol rehabilitation, *see, e.g., Newlon*, 212 F.3d at 424; *Cornielle*, 171 F.3d at 754 (citing *United States v. Maier*, 975 F.2d 944, 948 (2d Cir.1992)); *United States v. Whitaker*, 152 F.3d 1238, 1241 (10th Cir.1998); but other factors, such as church and community involvement, family counseling and reconciliation, psychiatric treatment (and the expert opinions of treatment providers regarding the defendant's prognosis), steady employment, extraordinary expressions of guilt and remorse, and compliance with conditions of pre-trial release have also been considered. *See, e.g., DeShon*, 183 F.3d at 889–90; *Jones*, 158 F.3d at 503; *United States v. Kapitzke*, 130 F.3d 820, 823 (8th Cir.1997); *United States v. Shasky*, 939 F.Supp. 695, 698–700 (D.Neb. 1996). No exhaustive list of positive behavior can be compiled; rather, the court should evaluate each situation on a case-by-case basis, keeping in mind that such departures should be reserved for those defendants who demonstrate a genuine commitment toward turning their lives around such that they are unlikely to re-offend.[5]

---

tion should apply. U.S.S.G. § 3E1.1 cmt n. 1(g).

**3.** *Sally* was decided prior to the adoption of U.S.S.G. § 5K2.19 and concerned post-conviction rehabilitative efforts. Nevertheless, the court's evaluation of the showing necessary to support a departure for post-offense rehabilitation remains instructive.

**4.** In another pre-section 5K2.19 case, the Second Circuit noted: "The successful rehabilitation of a criminal, on the other hand, is a valuable achievement of the criminal process. The Act recognizes this by requiring sentencing courts to consider 'the need for the sentence imposed ... to provide the defendant with needed educational and vocational train-

ing ... or other correctional treatment ....'" *United States v. Core*, 125 F.3d 74, 78 (2d Cir.1997) (quoting 18 U.S.C. § 3553(a)(2)(D)).

**5.** As one commentator has noted, "in this context, the *ad hoc* approach is unavoidable and necessary, perhaps even appropriate. The very nature of rehabilitation is such that it differs from case to case. The impact of rehabilitation on sentencing *should* depend on such factors as the extent of the defendant's preexisting problems, the degree of effort required to achieve the rehabilitation, the degree of rehabilitation achieved, the level of certainty that the rehabilitation is real and permanent, and other highly individualized considerations. Departures are intended in part to permit judges to account for 'the vast

In the present case, I find as follows. First, although defendant's rehabilitative efforts have all come while in custody, his situation is properly characterized as post-offense rather than post-sentencing. On September 16, 1999, defendant was arrested and charged with possession with intent to distribute cocaine. He has been custody since that date. On August 24, 2000 he was sentenced to 72 months imprisonment for that offense. *United States v. Jones,* Case No. 00–CR–30 (E.D.Wis. Aug. 24, 2000) (judgment). He is currently incarcerated at the Federal Correctional Institution in Milan, Michigan.

 The instant offense was committed between January 1, 1995 and September 14, 1999. Section 5K2.19 forbids departures only for rehabilitative efforts "undertaken by a defendant after imposition of a term of imprisonment for the instant offense," not other crimes. Therefore, I may consider a departure.[6]

Second, I find that defendant's efforts to better himself are, compared to most other defendants who receive a reduction for acceptance of responsibility, extraordinary. Defendant has participated in substance abuse counseling; educational, parenting and religious classes; and obtained employment through UNICOR as a welder with good work reports. (PSR ¶ 56.) His behavior while in prison has been commendable, with just one incident report (for use of a phone without authorization) during his term of incarceration. (PSR ¶ 56.)

Defendant has submitted proof of the following drug rehabilitation efforts while housed at the Waukesha County Jail as a pre-trial detainee:

- completion of ARO Counseling Centers Short Term Intensive Group program "with outstanding participation" (R. 288, Ex. A, B);
- completion of ARO's Intensive and Relapse Prevention Group programs, with his counselor noting: "Braderick appears motivated for recovery and for change" (R. 288, Ex. C, D, E).

Defendant is on the waiting list for substance abuse treatment at FCI–Milan. (PSR ¶¶ 56, 90.)

Defendant has submitted proof of completion of the following educational courses at the Waukesha County Jail:

- ARO Counseling's anger management course "with outstanding participation" (R. 288, Ex. F);
- ARO's cognitive thinking course, also "with outstanding participation" (R. 288, Ex. G);
- the Nutrition Education Program offered by the University of Wisconsin—Extension (R. 288, Ex. I); and
- the Successful Thinking course (R. 288, Ex. J);

as well as these courses at FCI–Milan:

- "Stocks, Bonds and Investment Securities" (R. 288, Ex. K);
- "Public Speaking" (R. 288, Ex. L);
- "Basic Nutrition" (R. 288, Ex. M); and
- "Fitness Health Skills" (R. 288, Ex. N).

Defendant is currently taking remedial education classes at FCI–Milan. (PSR ¶ 56.)

---

range of human conduct potentially relevant to a sentencing decision.'" Martin S. Himeles, Jr. & Deborah A. Richardson, *Post–Offense Rehabilitation: The Means to a Pre–Guidelines World or a Path of Departure Abuse?*, 11 Fed. Sen. Rptr. 328, 329–330 (May/June 1999) (quoting U.S.S.G. § 1A4(b)).

**6.** Because defendant's motion concerns post-offense rehabilitation, I need not decide whether § 5K2.19, which became effective on November 1, 2000, applies in this case, where the offense conduct occurred from 1995 to 1999. *See Buckley,* 251 F.3d at 670.

Defendant has also attempted to stabilize his personal life and has taken steps that show he is thinking about the future and fulfilling his family responsibilities upon release:

- on August 31, 2000, he married Dorthia Davis, the mother of his youngest child (PSR ¶ 82);
- he completed parenting and family literacy classes while at the Waukesha County Jail (R. 288, Ex. O, P);
- he attended workshop programs for fathers who do not live with their children, offered by Family Service of Waukesha (R. 288, Ex. Q); and
- he completed the marriage seminar offered at FCI–Milan (R. 288, Ex. R).

Finally, defendant has participated in religious classes, including:

- "The Death and Rising of Jesus Christ" (R. 288, Ex. S);
- "Growing in Christ" (R. 288, Ex., T); and
- "The Reluctant Prophet" (R. 288, Ex. U).

I conclude that defendant has made extraordinary efforts to rehabilitate himself, well beyond those seen in the typical case where the defendant receives a reduction for acceptance of responsibility. Defendant has shown a desire to avoid controlled substances, strengthen and maintain his family and religious ties, and learn employment skills. Therefore, a departure is appropriate.

However, in determining whether and to what extent to depart, I always consider the factors set forth in 18 U.S.C. § 3553(a), including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide for the defendant's rehabilitative needs; (3) the kinds of sentences available; (4) any pertinent policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to the victims of the offense.

This was a serious offense: defendant participated in a conspiracy to distribute a large amount of marijuana over a period of years; he operated several marijuana houses in Racine, which surely had a deleterious impact on the neighborhoods in which they were found; and, worst of all, he was associated with a street gang involved in numerous criminal activities. Moreover, defendant's record reveals an inability to follow the law. Defendant had barely been released from an Illinois prison when he involved himself in this offense; he was on parole at the time. Therefore, a substantial period of confinement must be imposed to promote respect for the law.

Nevertheless, I conclude that defendant's exemplary conduct over the past few years does merit some consideration in the form of a modest departure. Once a court decides to depart the extent of the departure is a matter within the court's discretion and will be upheld so long as it is reasonable and adequately reflects the structure of the guidelines. *United States v. Cruz–Guevara,* 209 F.3d 644, 647 (7th Cir.2000); *see also* 18 U.S.C. § 3742(e)(3). While there are no hard and fast rules to govern the extent of a departure, the Seventh Circuit has approved a method that involves calculating the defendant's sentence by analogy to existing guideline provisions. *Cruz–Guevara,* 209 F.3d at 648. I will grant defendant a two level departure, which equals the reduction allowed by § 3E1.1(a) and provides sufficient re-

ward without unduly depreciating the seriousness of the offense.

**B.**

 Defendant also requests a downward departure based on extraordinary family circumstances. U.S.S.G. § 5H1.6 states: "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." Thus, family circumstances are a discouraged basis for departure and may serve as grounds only when a defendant's family situation is unusual or extraordinary. *See, e.g., United States v. Dominguez*, 296 F.3d 192, 195 (3d Cir.2002); *United States v. Canoy*, 38 F.3d 893, 906 (7th Cir.1994); *United States v. Norton*, 218 F.Supp.2d 1014, 1018 (E.D.Wis.2002). This determination is fact-intensive and thus commended to the district court's discretion. *See United States v. Owens*, 145 F.3d 923, 929 (7th Cir.1998).

 Because "the guidelines do not contemplate a discount for parents of children," *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir.1999), the defendant must show that "the period of incarceration set by the Guidelines would have an effect on the family or family members beyond the disruption to family and parental relationships that would be present in the usual case." *Canoy*, 38 F.3d at 907. There are three main factors in this determination.

First, the court must consider the specifics of the family situation, including the number of dependants the defendant has, any special needs or disabilities they have, the role the defendant plays in their lives, and whether there are others to assist in their care. Second, the court should consider whether, given the length of the sentence the defendant faces, a reasonable departure would allow release in time to promote the dependents' welfare. Third,

the court should consider the purposes of sentencing, including the need for just punishment, the need for deterrence, protection of the public, and the rehabilitation of the defendant. *Norton*, 218 F.Supp.2d at 1019–20.

Defendant has eight children ranging in age from three to twenty-two. The youngest, three year old DeAngelo Davis, lives with his mother and defendant's wife, Dorthia Davis. Ms. Davis works and raises the child by herself despite a disabling heart problem.

Three year old Davion Jones lives with his mother in Racine and twelve year old Brandy Jones with her mother in Minnesota. There is no indication that defendant has been a part of their lives, although he does owe a substantial amount of back child support.

Twelve year old Patrick Jones and fourteen year old Brad Jones live with their foster parent, Sara Gross, in Burlington, Wisconsin. Ms. Gross indicates that the children's mother has little contact with them, but defendant does call and write regularly.

Betty Davis, age sixteen, resides with defendant's parents as her mother is deceased. Defendant's mother Irene was recently treated for breast cancer.

Finally, Darius Tucker, age twenty-two, resides in St. Paul, Minnesota with his mother, and Monique Crowder, also age twenty-two, with her mother in Battle Creek, Michigan.

There is little doubt that defendant could assist, financially and otherwise, in raising the minor children. However, it appears that they have been without him for most, if not all, of their lives. Defendant has presented no evidence of his importance to the children or the role he played in their lives. Because he has spent much of his adult life in and out of

prison, it appears that the children's mothers, and defendant's parents, have provided for them. Further, nothing I do here could return defendant to the children prior to December 6, 2004, when the sentence defendant is now serving comes to an end. *See United States v. Wright*, 218 F.3d 812, 815 (7th Cir.2000) (stating that a departure for family circumstances is most appropriate when the defendant "could be given probation (or home confinement) rather than incarceration with only a small downward departure"). Finally, for the reasons stated above, the nature of the offense and defendant's criminal history weigh against a departure. Therefore, although I am sympathetic to the situation faced by the children and Ms. Davis, I do not believe that a further departure on this basis would be appropriate, and I decline to so exercise my discretion.

## II.

■ Having determined that a departure is appropriate, the next question is from where on the sentencing table do I depart. In this case, the statutory maximum is 60 months, but defendant's guideline range is 70–87 months. In the opposite situation, where the statutory minimum is higher than the upper end of the guideline range, the court departs from the statutory level. *United States v. Hayes*, 5 F.3d 292, 295 (7th Cir.1993); *see also United States v. Head*, 178 F.3d 1205, 1207 (11th Cir.1999). This is so because U.S.S.G. § 5G1.1(b) states that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." In *Hayes*, the court thus approved of the district judge's decision to depart downward from

the lowest offense level that could support the statutory minimum. 5 F.3d at 295.

I have found no case addressing the present situation. However, U.S.S.G. § 5G1.1(a) states that "[w]here the statutorily authorized sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline range." Therefore, following the logic of *Hayes*, I depart from the lowest range that would support the statutory maximum sentence, in this case offense level 17.[7]

A departure of two levels brings defendant to a level of 15. Coupled with a criminal history category of VI, his imprisonment range is 41–51 months.

## III.

■ Finally, defendant is serving an undischarged term of imprisonment on Case No. 00–CR–30, with an expected discharge date of December 6, 2004. He did not commit the instant offense while in custody, and the undischarged term of imprisonment did not result from an offense fully taken into account in the offense level for the instant offense. *See* U.S.S.G. § 5G1.3(a) & (b). Therefore, I may impose the sentence "to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c).

District courts have "very broad" discretion in this situation, *United States v. Walker*, 98 F.3d 944, 945 (7th Cir.1996), but should consider the sentencing factors set forth in 18 U.S.C. § 3553(a), as well as the type (e.g., determinate, indetermi-

---

7. Coupled with a criminal history category of VI, level 17 produces a range of 51–63 months.

nate/parolable) and length of the prior undischarged sentence; the time served on the undischarged sentence and the time likely to be served before release; the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and any other circumstance relevant to the determination of an appropriate sentence for the instant offense. U.S.S.G. § 5G1.3 cmt. n. 3.

The government argues that I should run the entire sentence consecutively; defendant, entirely concurrent (and provide "credit" for the time already served). I conclude that a sentence of 41 months, with seventeen months to run concurrently and twenty-four months to run consecutively to the sentence in Case No. 00–CR–30, is sufficient to provide reasonable punishment for the instant offense. I further conclude that no "adjustment" to allow credit for time served should be granted. I first address defendant's position, then the government's.

■■■ I have the authority under U.S.S.G. § 5G1.3 to "adjust" a sentence to award "credit" for time already served in a prior, unrelated case. *See Ruggiano v. Reish,* 307 F.3d 121, 124 (3d Cir.2002); *cf. United States v. O'Hagan,* 139 F.3d 641, 656–58 (8th Cir.1998) (upholding downward departure to compensate for the lost opportunity to obtain a sentence fully concurrent with a previous state sentence); *United States v. Blackwell,* 49 F.3d 1232, 1240–42 (7th Cir.1995) (noting that downward departure to credit defendant for discharged state sentence is appropriate); U.S.S.G. § 5G1.3 cmt n. 7 (stating that a

downward departure is permitted when the sentence in the instant case would have run concurrently to a discharged term of imprisonment under § 5G1.3(b)). This is not the type of "credit" referred to in 18 U.S.C. § 3585(b),[8] which is exclusively within the authority of the BOP to grant.[9] *Ruggiano,* 307 F.3d at 124. Rather, this is a downward "adjustment" granted by the judge at the time of sentencing; the judge imposes a lesser sentence under § 5G1.3 to reflect time served for which no credit is received. *Id.* at 132–33; *United States v. Anderson,* 98 F.Supp.2d 643, 645 n. 3 (E.D.Pa.2000). As the *Ruggiano* court explained, the district judge would say: " 'I hereby adjust the defendant's federal sentence under § 5G1.3 so as to be fully concurrent with' " his undischarged sentence. 307 F.3d at 133.

However, in light of the § 3553(a) factors discussed above, I conclude that it would unduly depreciate the seriousness of the offense in the present case were I to adjust the sentence such that it ran "fully" concurrent with that in Case No. 00–CR–30, in other words, by awarding credit back to September 16, 1999. Such an order would result in virtually no additional punishment for this offense. The instant offense was a serious one: defendant operated several drug houses over a period of four years, damaging neighborhoods; he was a member of a violent street gang; and his prior record reveals a disposition to lawlessness. For similar reasons, I find that running the sentence concurrent from the date of sentencing would also fail to provide necessary punishment. Instead, I conclude that two additional years of imprisonment is reasonable.

---

8. Section 3585(b) refers to time spent in official detention as a result of the offense for which the sentence was imposed or any other charge for which the defendant was arrested after commission of the offense for which the sentence was imposed.

9. Indeed, the BOP could not grant this type of "credit" because it would result in credit for the same period of time being awarded on two different sentences, which § 3585(b) forbids.

The government's argument—that a fully consecutive five year sentence[10] is called for—is unpersuasive. The instant offense was committed *prior* to the offense for which defendant is now incarcerated. Both were drug offenses committed in this district. Had they been prosecuted in a single indictment, defendant would likely have received *no* additional punishment for the instant offense. This is so because the drug weights from both charges would have been aggregated under U.S.S.G. §§ 3D1.2(d) and 2D1.1. In Case No. 00–CR–30, the drug weight attributed to defendant was 590 kilograms of marijuana.[11] (00–CR–30 PSR ¶ 22.) Under § 2D1.1(c)(6), the offense level for offenses involving 400 to 700 kg of marijuana is 28. In the instant offense, the drug weight attributed to defendant was 40 to 60 kg of marijuana. (PSR ¶ 20.) Adding the drug weight from the instant case to the former would have caused no change in offense level.[12]

This is not to say that the government acted inappropriately in prosecuting the offenses separately. But I must have the authority to mitigate some of the disparity resulting from that decision. Avoidance of unwarranted sentencing disparity is, after all, one of the primary goals of the guidelines. As the Supreme Court noted in *Witte v. United States*, 515 U.S. 389, 404–05, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995):

> There are often valid reasons why related crimes committed by the same defendant are not prosecuted in the same proceeding; and § 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding).

Therefore, " § 5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence." *Id.* at 405, 115 S.Ct. 2199.

*Witte* was decided prior to the 1995 amendment to the guidelines which changed the language of § 5G1.3(c) from: "In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense" to: "In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." *United State Sentencing Commission Guidelines Manual*, Appendix C 367 (1997) (amendment 535). But the *Witte* Court's observation about disparity remains valid.

10. The government opposed defendant's requests for downward departures but did not dispute that defendant had made considerable efforts to rehabilitate himself.

11. While defendant was charged with an offense involving cocaine, a certain amount of marijuana was included as relevant conduct, and the cocaine was converted to marijuana under the drug equivalency table. (00–CR–30 PSR ¶ 22.)

12. There appears to be no relevant difference between the 1998 guidelines, which were used on Case No. 00–CR–30, and the 2001 guidelines, which the parties agreed applied in the present case. I further note that there appears to be no overlap between the drug amounts in the two cases. Had there been such overlap, a further adjustment or departure may have been called for. *See Witte v. United States*, 515 U.S. 389, 405–06, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

The pre–1995 commentary stated that the sentencing court " 'should consider a reasonable incremental penalty ... that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed ... had all of the offenses been federal offenses for which sentences were being imposed at the same time.' " *Ruggiano,* 307 F.3d at 129. While the post–1995 commentary is silent as to the need for this type of "hypothetical sentencing" calculation, sentencing courts retain the discretion under § 5G1.3(c) to entertain such considerations, *id.* at 129–30, particularly in light of the fact that application note 3 to the current guideline advises courts to "avoid unwarranted disparity," and that the language of the guideline itself expands the district court's discretion to fashion a just sentence.

In the present case, hypothetically combining the two cases would result in a fully or nearly fully concurrent sentence. However, in light of the factors discussed above, I conclude that two years of additional imprisonment is necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Therefore, defendant will be sentenced to 41 months imprisonment, with seventeen months to run concurrently and twenty-four months consecutively. Other conditions of the sentence appear in the judgment.

### IV.

Defendant's past, as he admits, is no cause for pride. But because he has made a strong showing that he intends to turn his life around and become a productive citizen and responsible husband and father upon release, I grant his motion for a downward departure based on extraordinary rehabilitation. However, for the reasons stated, I decline to adjust the sentence so as to make it fully concurrent. Rather, I conclude that a partially concurrent sentence properly serves the goals of sentencing while avoiding unwarranted disparity.

**SO ORDERED.**