**UNITED STATES of America,
Plaintiff,**

v.

**Steven RUTHERFORD, Defendant.**

**No. 03–CR–224.**

United States District Court,
E.D. Wisconsin.

June 24, 2004.

---

Brian Pawlak, Racine, WI, for Plaintiff.

Matt J. Ricci (Ricci), Milwaukee, WI, for Defendant.

### SENTENCING MEMORANDUM

ADELMAN, District Judge.

On September 30, 2002, defendant Steven Rutherford was stopped by police in Greenfield, Wisconsin driving a truck carrying ten illegal aliens. A man in Arizona had offered him and his brother Mark several hundred dollars and an eight-ball of cocaine to transport the aliens to Wisconsin, where they hoped to find work.

Federal authorities filed a criminal complaint against the brothers but dismissed it several weeks later with the understanding that Mark, who had a history of smuggling aliens, would cooperate with them. Apparently, Mark did not satisfactorily assist the government and, as a result, in late 2003 defendant and Mark were indicted on one count of transporting aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). In January 2004 defendant appeared and was released on bond. In April, he pled guilty to the indictment, and a pre-sentence report (PSR) was prepared. The PSR assigned an offense level of thirteen and a criminal history category of I, producing an imprisonment range of twelve to eighteen months. Defendant now moves for a downward departure based on his post-offense rehabilitation. In this memorandum I address his motion.

## I. FACTS AND BACKGROUND

At the time of this offense defendant was addicted to crack cocaine. He began using cocaine in 1984 and quickly became addicted. For a time, he was a functioning addict, holding down jobs with various trucking companies and hiding his problem from his wife and children. Eventually, he began disappearing from home for days at a time. He lost several jobs due to his unreliability. In July of 2000, he was hired to drive a load from Fresno to Los Angeles, but never left town, instead selling the company cell phone and pager for drugs. In 2002 his addiction to crack spiraled completely out of control. He quit his job and separated from his wife. She filed for divorce but was unable to locate him to serve him with papers. On May 8, 2002, defendant was arrested for possession of drug paraphernalia in Reno, Nevada. Prior to his arrest, he was observed in a hotel parking lot asking strangers to sell or give him drugs. Someone called the police and, pursuant to a consent search, officers discovered a crack pipe on his person.

Defendant then went to Arizona to live with his brother Mark. Mark was involved in transporting illegal aliens within the United States. Mark asked defendant to help, and, on or about September 28, 2002, defendant and Mark left Arizona for Milwaukee transporting ten illegal Mexicans. As compensation, defendant received several hundred dollars and an eight-ball of cocaine. As previously indicated, on September 30 defendant was arrested, and a criminal complaint was filed and subsequently dismissed.

It was at that point—when no charges were pending—that defendant began to turn his life around. On December 26, 2002, he entered a drug treatment program at the Salvation Army Rehabilitation Center in Dallas, Texas. He completed the program on May 1, 2003. Defendant complied with all requirements of the program, including passing random drug tests and attending numerous classes, such as Narcotics Anonymous, Alcoholics Anonymous, Relapse Prevention, Family Matters, Character Building and a host of others. Defendant attended Chapel every Wednesday and Sunday, and paid for his participation in the program by working as a floor person in a Salvation Army store.

In defendant's case, the program worked. Since the present charges were re-issued, defendant's drug tests have all been negative and he has complied with all conditions of pre-trial release. For a person whose addiction to crack was so strong that it turned a working family man into a transient begging for drugs, defendant's progress has been remarkable.

Since completing treatment, defendant has also put the other pieces of his life back in place. He has reconciled with his wife and moved back in with her and their three children. Mrs. Rutherford reports that "her husband is doing all he can right now to make this up to the family." This is not the statement of a wife shading the truth to help her husband. The statements she made to pre-trial services in October 2002, when defendant was first charged, reveal that she was fed up with defendant and wanted a divorce. The fact that she was willing to take him back speaks to the gains that defendant has made.

In addition, defendant has re-obtained steady employment as a truck driver and laborer. His employer indicates that he works overtime and has been very dependable. Defendant has also become very active in his church. His Bishop reports that in the past year defendant has begun teaching children and become involved in the church's outreach program for the elderly.

The question presented is whether defendant's rehabilitation merits a downward departure from the guidelines. I conclude that it does.

## II. GENERAL DEPARTURE STANDARD

The court may depart if it finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. 18 U.S.C. § 3553(b)(1); U.S.S.G. § 5K2.0(a). The Sentencing Commission has provided guidance in making departure decisions by listing certain factors that are "forbidden" bases for departure, "discouraged" bases for departure, and "encouraged" bases for departure. *Koon v. United States,* 518 U.S. 81, 93–95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

The Supreme Court in *Koon* adopted the following test for determining whether to depart: (1) What factors of the case make it special or unusual? (2) Has the Commission forbidden, encouraged, or discouraged departures based on those factors?

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland.

*Id.* at 95–96, 116 S.Ct. 2035 (internal citations omitted).

## III. DISCUSSION

### A. Standard for Departure Based on Post–Offense Rehabilitation

Defendant argues that his case falls outside the heartland because, since the com-

mission of the offense, he has successfully undergone drug treatment, re-obtained steady employment, reconciled with his wife and family and become active in his church. Because a court can consider "post-offense rehabilitative efforts"[1] in deciding whether to grant a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, it has generally been held that departure on this basis is warranted only if the defendant can show that his efforts are exceptional enough to be considered atypical of the cases in which the § 3E1.1 reduction is usually granted.[2] *See, e.g., United States v. Chapman,* 356 F.3d 843, 848–49 (8th Cir.2004); *United States v. Jones,* 233 F.Supp.2d 1067, 1070–71 (E.D.Wis.2002) (collecting cases).

Courts considering whether to grant departures on this basis have often focused on drug and alcohol rehabilitation, *see, e.g., United States v. Maier,* 975 F.2d 944 (2d Cir.1992); *United States v. Logan,* No. 02–CR–440, 2004 WL 417341, 2004 U.S. Dist. LEXIS 1201 (N.D.Ill. Feb 2, 2004); *United States v. Lange,* 241 F.Supp.2d 907 (E.D.Wis.), and for good reason—drug addiction and crime go hand-in-hand. David I. Shapiro, *Sentencing the Reformed Addict: Departure Under the Federal Sentencing Guidelines and the Problem of Drug Rehabilitation,* 91 Colum. L.Rev. 2051, 2071 (Dec.1991) ("Although the precise link of cause and effect between drugs and crime is still unknown, it is generally accepted that drug addiction is powerfully tied to a criminal life-style."); *see also* U.S.S.G. § 5H1.4 ("Substance abuse is highly correlated to an increased propensity to commit crime."). Many—perhaps most—of the defendants seen by this court

have substance abuse issues. For these defendants, defeating drug addiction is a necessary step toward leading a law abiding life. *See, e.g.,* Joan Petersilia, *Parole and Prisoner Reentry in the United States,* 26 Crime & Just. 479, 518 (1999) ("A recent research summary of drug treatment effectiveness reported that 'a growing body of research' shows that voluntary or mandatory drug treatment can reduce recidivism, especially when treatment is matched to offender needs[.]").

Of course, a court considering a downward departure motion based on post-offense rehabilitation can and should consider other factors such as employment, compliance with conditions of pre-trial release, family counseling and reconciliation, psychiatric treatment, and community and church involvement. *Jones,* 233 F.Supp.2d at 1071 (collecting cases). Whatever the specifics, before a sentencing court may properly rely on rehabilitative efforts as a basis for a downward departure, the evidence must show that the defendant has made concrete gains in turning his life around. *Id.*

The departure allows "truly repentant defendants to earn reductions in their sentences based on a demonstrated commitment to repair and to rebuild their lives." *United States v. Sally,* 116 F.3d 76, 81 (3d Cir.1997). This is significant because, even though rehabilitation is no longer considered one of the purposes of imprisonment, 28 U.S.C. § 994(k), the "successful rehabilitation of a criminal [remains] a valuable achievement of the [overall] criminal process." *United States v. Core,* 125 F.3d 74, 78 (2d Cir.1997). In other words,

---

1. U.S.S.G. § 3E1.1 cmt. n. 1(g).

2. *But cf. United States v. Smith,* 311 F.Supp.2d 801, 804 (E.D.Wis.2004) (expressing doubt that under facts of case it could be said Commission adequately considered defendant's post-offense rehabilitation); J. Gor-

don Seymour, *Downward Departures from the Federal Sentencing Guidelines Based on the Defendant's Drug Rehabilitative Efforts,* 59 U. Chi. L.Rev. 837, 845 (1992) (stating "it is difficult to see what the defendant's drug rehabilitation could do to further" the goals of § 3E1.1).

we want offenders to reform, for their sake and that of society; it is appropriate to provide them with an incentive to do so. A reformed offender is less likely to re-offend, thus a reduced sentence for such an offender will serve the purposes of specific deterrence and protection of the public. *See* 18 U.S.C. § 3553(a)(2).

## B. Defendant's Motion

■ Defendant's efforts have been extraordinary. First, he has successfully undergone drug treatment. On his own initiative and with no criminal charges pending, he completed an intensive, five month in-patient program. Since completing the program, he has been completely drug free. It is important to note that aside from the present offense and his 2002 drug paraphernalia conviction, defendant, who is forty-four, has no other criminal record. With his addiction under control, he is unlikely to re-offend.

Second, defendant has reconciled with his family, re-obtained steady employment, and re-involved himself with his church. These factors all lend stability and structure to his life, and also suggest that he will probably not re-offend.

Defendant's transformation is real. Defendant's wife, who had filed for divorce and had enough of him, has agreed to take him back. I also find significant the evaluation of the experienced probation officer who prepared defendant's PSR:

[D]efendant has worked very hard in the last two years to change his life. He has not submitted a positive urinalysis test since his arrest and has reconciled with his family. He has found stable employment and is considered a reliable employee by his company. The defendant has an insignificant prior record and if not for his drug addiction proba-

bly would not have been involved with this offense.

The government opposes a departure, arguing that while defendant's efforts deserve praise, they do not take his case outside the heartland. The government contends that rather than turning away from a criminal lifestyle as did the defendant in *United States v. Smith,* 311 F.Supp.2d 801 (E.D.Wis.2004),[3] defendant simply returned to the law-abiding ways he had maintained before his addiction got out of control. In order to determine where a defendant stands at the time of sentencing, a court must consider where the defendant came from, but the relevant starting point is the time of the offense. Although from 1985 to 2000 defendant was a functioning drug addict who otherwise obeyed the law, at the time he committed the present offense, he was estranged from his family and had been reduced to begging drugs from strangers and driving aliens across the country in exchange for a few hundred dollars and an eightball of cocaine. It is difficult to sink much lower without being six feet under.

The government also argues that, unlike the defendant in *Smith,* defendant's transformation may have been motivated by his September 2002 arrest. There are two problems with this argument. First, no charges were pending at the time defendant entered drug treatment, and he had no reason to believe that charges would be refiled. Second, for purposes of a departure based on post-offense rehabilitation, it is not necessary that a defendant be free of indictment. Although the motives of a defendant facing charges may reasonably be subjected to greater scrutiny, the transformation of such a defendant may be just as real as that of one who has not been

**3.** In *Smith,* I granted a departure to a drug dealer who, on his own initiative and with no charges pending, gave up dealing, got mar-
ried and started a family, and obtained honest employment.

charged. *Cf. Jones,* 233 F.Supp.2d at 1070–74 (granting departure to defendant whose rehabilitation occurred in custody).

I sum, I conclude that defendant's efforts at self-improvement and reformation are exceptional enough to be considered atypical of the cases in which the acceptance-of-responsibility reduction is usually granted. Therefore, a departure is warranted.

## C. Extent of Departure

■ Once a court decides to depart, the extent of the departure is a matter within the court's discretion. The departure must be reasonable and tied to the structure of the guidelines. While there are no hard and fast rules governing this undertaking, the Seventh Circuit has approved a method that involves calculating the defendant's sentence by analogy to existing guideline provisions. *See United States v. Cruz–Guevara,* 209 F.3d 644, 647–48 (7th Cir.2000).

In past cases, I have granted a two level departure on this basis, which equals the reduction allowed under § 3E1.1(a). *See, e.g., Smith,* 311 F.Supp.2d at 810; *Lange,* 241 F.Supp.2d at 914; *Jones,* 233 F.Supp.2d at 1073–74. However, in the present case I will grant defendant a one level departure. This is sufficient to move him from Zone D to Zone C of the sentencing grid, which provides for the possibility of a split sentence, *see* U.S.S.G. § 5C1.1(d)(2), a significant benefit. I conclude that further departure would unduly depreciate the seriousness of the offense.

With the departure, defendant's offense level is twelve. Coupled with his criminal history category of I, the imprisonment range is ten to sixteen months. I sentence defendant to five months imprisonment. Upon release, defendant shall be placed on supervised release for three years. As a condition, defendant must comply with the conditions of home confinement for a peri-od not to exceed five months. Other conditions appear in the judgment.